[Crim. No. 1537.   Fourth Dist.   Feb. 15, 1960.]

THE PEOPLE, Respondent, v. WILBUR WATKINS, JR., Appellant.

William O. Burt for Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

GRIFFIN, P. J.—Defendant-appellant was charged with the murder of one Delois Ross, in violation of section 187, Penal Code. A jury verdict resulted in a conviction of the crime of murder, second degree.

Defendant claims on this appeal: (1) that the record does not support such conviction and argues that the crime delineated by the record shows, as a matter of law, the crime of manslaughter was committed and asks this court to remit the case to the lower court with instructions to reduce the crime to that of involuntary manslaughter; (2) that it was error for the trial court to refuse defendant's proffered instruction in the language of section 417, Penal Code, because the killing was shown to be without malice and done in the heat of passion upon a sudden quarrel and the use of the gun could have been, under said section, a misdemeanor.

A résumé of the facts indicates that Delois Ross was found lying in the front doorway of her home by a juvenile

officer. She was bleeding and moaning. She told the officer that the defendant had shot her because of a quarrel, and that he had run in an easterly direction. The officer put a call on the radio giving the description of the defendant as given to him by Mrs. Ross and detectives arrived about 2:30 p.m. Defendant was sighted running toward a stopped bus and apprehended. He told the officer, "I am the man you are looking for; I did it."

Mrs. Ross was conscious at 2:30 p.m. but died within the next 45 minutes. An autopsy disclosed that she had been shot seven times with a .22 caliber pistol. Two shots had passed completely through her body; one shot had passed through her left forearm and one shot had creased the top of her head. In the opinion of an expert in chemistry and ballistics, at least five of the seven shots were fired approximately 12 inches from the decedent, two striking the decedent through the front of her sweater and three striking her through her skirt and sweater from the back. Defendant told an officer that he had left Palm Springs about 11 a.m. that day; that he went to Mrs. Ross' residence and walked in; that there was an argument; that the defendant told the decedent that he didn't want her to leave for Los Angeles, as she had previously arranged, and that the defendant obtained his pistol from a bedroom and shot Mrs. Ross, who was then in the kitchen.

In defense, defendant testified at the trial that in the morning of January 16 he was in Palm Springs, drank considerable whiskey and left for San Bernardino; that he was bringing about $50 to decedent, as he had done in the past; that this money was intended to support his twin infants, illegitimate children of deceased and defendant, and to commence payment to an attorney for divorce proceedings to be instituted by decedent against her husband; that when he arrived at decedent's home, decedent asked him why he wasn't working that day; that she told him he could not come there whenever he wanted to and that she was not his wife; that defendant called her a liar, told her he was helping to pay the rent and he felt that he could come there whenever he got ready to do so; that he told her he had the money and she said, "To hell with the money"; that Mrs. Ross told defendant she was going to Los Angeles that day with her sister and said it was none of his "god-damned business" why she was going to Los Angeles; that he went into Mrs. Ross' bedroom, where she had been keeping the .22 caliber pistol and returned to the kitchen with it; that defendant pried open a piggy bank belonging to

decedent and poured the money out and began counting it; that Mrs. Ross continued telling him that he couldn't tell her what to do and not to come to her house at any time he desired; that she wasn't his wife and he wasn't her husband, and so they started "cussing"; that defendant pocketed the silver from the piggy bank; that he then shot Mrs. Ross; and he understood by the development of the preceding argument that she was completely through with him and that he was not to come back. He said he remembered firing the gun but did not remember anything further until the officer stopped him.

■■■ "In a homicide case, when it is proved that defendant assaulted decedent with a dangerous weapon in a manner endangering life and resulting in death, and the evidence does not create in the jurors' minds a reasonable doubt whether defendant's act may have been justified, or its criminal character mitigated by the influence of passion or terror, no further proof of malice or intent to kill is required to sustain a conviction of second degree murder, inasmuch as an actual intent to kill is not an essential element of such crime, and in the absence of justifying or mitigating circumstances, malice is implied from such assault." (*People* v. *Torres,* 94 Cal.App.2d 146 [210 P.2d 324].)

Viewed in this light, the evidence was sufficient to support the verdict of guilty of murder in the second degree. (*People* v. *Wells,* 10 Cal.2d 610, 617 [76 P.2d 493]; *People* v. *Todd,* 154 Cal.App.2d 601, 607 [317 P.2d 40].)

■ It is the contention of defendant that the record in the present case presents only a typical background for a crime arising from a heat of passion, since the defendant was suddenly thrown out of decedent's life and without previous warning or intimation that the relationship was coming to an end. The evidence does not show as a matter of law that the crime of involuntary manslaughter resulted. ■ The sufficiency of the evidence of mitigating circumstances reducing a homicide from murder to manslaughter is ordinarily a question of fact for the jury, with which the appellate court should interfere only in exceptional cases. (*People* v. *Wells, supra,* p. 623.)

■ The argument that defendant shot "wildly" and in a reckless manner is not borne out by the record. Seven hits out of seven shots fired at a falling form, five of said shots being fired from a range of approximately 12 inches from the body, is not "wild" shooting and would not justify an

instruction in the language of section 417, Penal Code, which provides that any person who draws or exhibits any firearm, whether loaded or unloaded, in a rude, angry or threatening manner, or who, in any manner, unlawfully uses the same in any fight or quarrel is guilty of a misdemeanor. (*People* v. *Piercy*, 16 Cal.App. 13, 16 [116 P. 322].)

The jury was properly instructed on the offense of murder, the included charge of manslaughter and the term "heat of passion." A form of voluntary manslaughter verdict was given to the jury and by it rejected.

The jury was adequately informed that it was not bound by the legal presumption raised by evidence of an assault with a deadly weapon. No error was committed by the trial court which would justify a remission of the cause to the lower court.

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 13, 1960. Schauer, J., and White, J., were of the opinion that the petition should be granted.