[Crim. No. 13792.   Second Dist., Div. One.   Jan. 31, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM WALLACE BRUNK, Defendant and Appellant.

Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Raymond M. Momboisse, and Frank O. Bell, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

LILLIE, J.—A jury convicted defendant of second degree murder; he admitted a prior felony conviction. Defendant appeals from the judgment.

Shortly before midnight on August 29, 1966, James Landi, a bartender at the Gay 90's, asked Patrick McCall to watch the bar while he threw out two men (defendant and James Perry) seated at the end of the bar. McCall saw Landi and defendant standing close to each other face to face and some movement which may have indicated some pushing but it happened so fast he could not tell; however, a second later McCall heard a sound like a firecracker. Landi turned around and McCall saw a hole in his abdomen; at the same time he saw defendant and Perry leave the bar. When Officer Holroyd arrived, Landi was lying on the floor; blood was flowing from a gunshot wound in his abdomen. The officer asked Landi who shot him; Landi replied, ''Bill Brock shot me,'' but was unable to answer further questions before he died.

For the defense Perry testified that he and defendant had a couple of drinks at a bar on York Boulevard and at a friend's house, visited several more bars and finally arrived at the Gay 90's; one of them ordered beer but Landi came out from behind the bar and hit defendant in the face; then he heard a shot and saw defendant head for the door so he followed. He admitted a prior felony conviction. Miss Cox, one of the persons in the bar, testified that Landi refused to serve defendant and Perry, and struck defendant in the face; shortly thereafter she heard a gunshot.

On rebuttal Officer Aguirre testified that he talked to James Perry at 11:30 a.m. on the day of the shooting and Perry told him:

"We went to the bar, Bill and I, about 11:30 or so. We were going to have a drink and we had just sat down and this bartender came over and told us to get out. Then he came around the outside of the bar and Bill got up. Then I heard a shot and the bartender started to stagger and go to the back of the bar. I don't know what really happened. We just took off running."

Appellant claims there is a complete lack of evidence that he killed Landi—no one saw him do it, there was no scientific evidence that he killed him, there was no proof he had a gun and Landi told the officer a Mr. "Brock" not Brunk shot him.

■ It is undisputed that Landi went over to defendant and Perry and was shot in the process of asking them to leave the bar. Viewed in a light most favorable to the People (*People v. Sweeney*, 55 Cal.2d 27, 33 [9 Cal.Rptr. 793, 357 P.2d 1049]), the evidence establishes that defendant was the only one in a position to inflict the fatal wound and that immediately after the shot was fired he fled the premises; it is fair to conclude that it was defendant who shot Landi. The jury, having rejected the defense testimony that Landi struck defendant in the face, was justified in any inference that the motive for the shooting, unwarranted as it might be, was Landi's attempt to eject defendant from the bar. Also for the jury's consideration was defendant's immediate departure after the shot was fired which constitutes flight, affords a basis for an inference of consciousness of guilt and constitutes an implied admission. (*People v. Jack*, 233 Cal.App.2d 446, 458 [43 Cal.Rptr. 566]; *People v. Brooks*, 64 Cal.2d 130, 138 [48 Cal.Rptr. 879, 410 P.2d 383]; *People v. Davis*, 48 Cal.2d 241, 251 [309 P.2d 1]; *People v. Santo*, 43 Cal.2d 319, 327 [273 P.2d 249].) The

evidence supports the jury's verdict of second degree murder. (*People* v. *Jones,* 225 Cal.App.2d 598, 606 [37 Cal.Rptr. 454].)

Appellant requests that we modify the judgment to reduce the offense from second degree murder to voluntary manslaughter because of ''an argument'' between him and Landi, the latter's weight and Landi's approach to force him to leave the bar, clearly presenting ''a case of extreme provocation, fear, and sudden passion.''

■ ''When the killing is proved to have been committed by appellant and nothing further is shown, the presumption of law is that it was malicious and an act of murder; but in such a case the verdict should be murder of the second degree. (*People* v. *Wells,* 10 Cal.2d 610, 617 [76 P.2d 493].) The burden of proving circumstances and mitigation is on the appellant. (*People* v. *Wells, supra,* at p. 617; *People* v. *Hall,* 212 Cal.App.2d 480, 482 [28 Cal.Rptr. 164].) ■ In addition, an assault with a dangerous weapon made in a manner to endanger life and resulting in death is sufficient to sustain a verdict of second degree murder. Malice is implied from the assault. (*People* v. *Watkins,* 178 Cal.App.2d 41, 44 [2 Cal.Rptr. 707] ; *People* v. *Torres,* 94 Cal.App.2d 146, 149-150 [210 P.2d 324].)'' (*People* v. *Jones,* 225 Cal.App.2d 598, 606 [37 Cal. Rptr. 454].)

The defense attempted to establish the mitigation necessary to reduce the killing to voluntary manslaughter. The issue was submitted to the jury on full instructions defining voluntary manslaughter (208-A Revised, CALJIC) and heat of passion and provocation (311, 311-A, CALJIC), and directing a finding of manslaughter if the jury found that defendant committed the homicide but a reasonable doubt existed between murder and manslaughter (305-AA, CALJIC). Having found defendant guilty of second degree murder, it is obvious that the jury disbelieved the testimony of Perry and Cox that defendant was struck in the face by Landi, and wholly rejected defendant's claim that he was provoked and killed him in the heat of passion. ■ The fact that Landi weighed 280 pounds and went over to defendant and Perry to throw them out of the bar does not in itself establish as a matter of law provocation sufficient to provoke in a reasonable man such a heat of passion as would render an ordinary man of average disposition likely to act rashly without due deliberation or reflection. ''To be sufficient to reduce a homicide to manslaughter, the heat of passion must be such as would naturally be aroused in the mind of an ordinary, reasonable person, under

the given facts and circumstances, or in the mind of a person of ordinary self-control. (*People* v. *Valentine*, 28 Cal.2d 121 [169 P.2d 1]; *People* v. *Danielly*, 33 Cal.2d 362 [202 P.2d 18].)'' (*People* v. *Bridgehouse*, 47 Cal.2d 406, 413 [303 P.2d 1018].)

On defendant's motion for a new trial, he asked the court to reduce the offense to voluntary manslaughter. The same argument made here was rejected by the trial judge who heard the evidence; he stated he was satisfied that the evidence justifies the verdict rendered by the jury.

Appellant's last point is that the jury should have been instructed that an assault contemporaneous with the shooting would not be the felony which would make the killing murder of the second degree, citing *People* v. *Hudgins*, 252 Cal.App.2d 174, 182 [60 Cal.Rptr. 176].)

An assault with a dangerous weapon made in a manner to endanger life and resulting in death is sufficient to sustain a conviction of second degree murder for malice is implied from the assault (*People* v. *Jones*, 225 Cal.App.2d 598, 606 [37 Cal.Rptr. 454]), unless there is evidence to suggest that the crime occurred under circumstances of substantial provocation. (*People* v. *Bridgehouse*, 47 Cal.2d 406, 414 [303 P.2d 1018].) Appellant's use of the term ''contemporaneous'' implies two distinct events; and in *People* v. *Hudgins*, 252 Cal.App.2d 174 [60 Cal.Rptr. 176], there were two felonious assaults, the last one resulting in the death of the victim. Defendant broke into the house, struck the victim a blow knocking him to the floor, then fired the shot which killed him. The court said that the felonious assault was ''contemporaneous'' with the killing, therefore, if the jury was only instructed that a homicide which occurred during the perpetration of the felony was murder, it might think that it could consider the previous felonious assault for the purpose of the felony-murder rule and completely ignore the circumstances surrounding the shooting; and held the instructions to be erroneous.

In the instant case the assault with the deadly weapon was not ''contemporaneous'' with the killing as in *Hudgins*. Here there was only one felonious assault and it was an integral part of the homicide. It was the assault on Landi with the gun that resulted in his death; thus, *Hudgins* does not here control. Under the facts, the instructions could not have resulted in the confusion existing in *People* v. *Hudgins*, 252 Cal.App.2d 174 [60 Cal.Rptr. 176], and there was no reason to instruct the jury as urged by appellant.

On his motion for a new trial, defendant argued that "to voir dire the jury on the death penalty simply to stick the defendant with a tougher jury" was prejudicial to his cause; he renews the argument here. The record fails to reflect what questions, if any, were asked the jury on *voir dire* and by whom, and if defendant voiced his objection thereto at the time.

Appellant states but does not argue the additional point "that he was denied the right to have his trial viewed in a light most favorable to him" because his counsel refused to call the owner of the bar "who would have testified that [he] was never hostile during all of the years he knew [him]."

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.