SCHOTTKY, J.
 

 Earl A. Williams was convicted by a jury of the crime of robbery in the second degree. He has appealed from the judgment entered and from the order of the court denying his motion for a new trial.
 

 
 *488
 
 Appellant makes two major contentions: (1) that the evidence is insufficient to support the judgment; and (2) that the court erred in failing to instruct the jury that flight is not sufficient in itself to establish guilt. Before discussing these contentions, we shall give a brief summary of the evidence as shown by the record.
 

 The evidence discloses that the appellant Williams was introduced to Robert Baillie in a bar shortly before 6 p. m. on the evening of April 9, 1959. They were drinking together and began to run short of money. They left the bar together and appellant drove Baillie to a market at the corner of 19th and “G” Streets, in the city of Sacramento. Baillie left the car, entered the market, placed his hand in his pocket to simulate a gun and ordered the clerk to put all the money in the register into a paper sack. After he had received the money Baillie left the market and ran across the street where appellant was waiting. The clerk ran from the store and saw Baillie enter appellant’s vehicle and the car being driven away.
 

 Charles Glover, a customer of the store, was driving his vehicle in the vicinity when he saw Baillie running and the clerk following him “hollering.” As soon as Baillie entered the vehicle it was driven away and Glover followed it. Appellant made a right turn into an alley and followed it to 21st Street, turned right again and drove to “I” Street. While driving, both appellant and Baillie were looking back. Appellant made a right turn again at “I” Street and drove to 20th Street where he pulled over to the curb. Baillie got out of the vehicle, pulled off his coat and started shaking his hands in the air. Glover stopped his car and informed appellant that he was under “citizen’s arrest.” Appellant drove his ear along the street and Baillie reentered it. Glover again followed appellant’s car to 16th and “G” Streets Avhere appellant drove through a service station to avoid a red light. The appellant then drove his car to an alley near 10th and “E” Streets. Both Baillie and appellant got out and started walking toward Glover. He again informed both men that they were under citizen’s arrest, and then deciding that discretion was the better part of valor Glover drove away. Appellant and Baillie reentered appellant’s ear and drove off.
 

 Appellant was arrested the next day at his home. According to one of the police officers who made the arrest, appellant asked if it was in connection with a robbery the previous night. Appellant told the police that he was not involved; that he had loaned his car to another man Avhose name he did not
 
 *489
 
 know. Later he admitted that he had been driving the car. He told the police that he drove Baillie to the market where he thought Baillie was going to cash a hot check; that Baillie returned and said, "Get the hell out of here”; that he saw some money; and that he knew what happened. Appellant’s statement to the district attorney was read into the record. He admitted he was at the scene when the robbery was committed, but contended that he knew nothing about it until after Baillie told him about it.
 

 Appellant testified in his own behalf. His testimony was that he was introduced to Baillie for the first time on the day of the robbery; that Baillie asked appellant if he could drive him over to "G” Street so that Baillie could cash a check; that he drove Baillie to the market; that he parked his car; that Baillie left and returned a few minutes later; that Baillie had a sack which he rolled up and placed in his pocket; that appellant drove his car away; that this ear pulled up alongside and a man said, "Mister, the police are after you”; and that Baillie then told him, "Bari, I have got the Chinaman’s money. ’ ’ Appellant insisted that he did not know that Baillie intended to rob the grocery.
 

 Appellant’s argument as to the insufficiency of the evidence may be summarized as follows: (1) There is no substantial evidence that appellant had knowledge that Baillie intended to rob the grocery; (2) Appellant’s statement to the police at the time of his arrest to the effect that his car was involved in the robbery was not an admission of guilt because it was made in the presence of his mother for the purpose of calming her; (3) Appellant’s alleged statement to one of the police officers that he knew that Baillie had robbed the grocery when Baillie returned to the car was not an admission of guilt but was rather the unreliable statement of a frightened and confused man; and (4) The evidence on the apparent flight of appellant from the scene of the robbery is not sufficient upon which to establish his guilt.
 

 Appellant concedes that appellant aided the perpetrator, Baillie, by driving him to the scene of the robbery and that he aided him in his departure from the market. But appellant argues that mere "aiding” is not enough and that the statute requires not only an "aiding” in the crime but also doing it with guilty knowledge of the wrongful purpose of the direct perpetrator. Appellant argues further that "aid” within the purview of section 31 of the Penal Code means to assist the
 
 *490
 
 efforts of another and does not imply guilty knowledge of felonious intent, whereas “abet” includes knowledge of the wrongful purpose of the perpetrator and counsel and encouragement in crime.
 

 The basic question that we must consider is whether or not there is sufficient evidence in the record to support appellant’s conviction as a principal in the robbery committed by Baillie.
 

 Section 31 of the Penal Code provides: “. . . All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, and all persons counseling, advising, or encouraging children under the age of fourteen years, lunatics or idiots, to commit any crime, or who, by fraud, contrivance, or force, occasion the drunkenness of another for the purpose of causing him to commit any crime, or who, by threats, menaces, command, or coercion, compel another to commit any crime, are principals in any crime so committed. ’ ’
 

 In the instant ease the acts of appellant constitute him an “aider and abettor” within the meaning of section 31 of the Penal Code as set forth above. Appellant concedes that he “aided” Baillie in the perpetration of the robbery but denies that there is sufficient evidence to show that he “abetted” Baillie in the commission of the crime. As the appellant points out, to “abet” a person in the perpetration of a crime one must aid or assist the direct perpetrator with knowledge of his wrongful
 
 purpose.
 

 Appellant’s argument is but an argument as to the weight of the evidence. We are satisfied that the evidence in the record and the inferences that may reasonably be drawn therefrom leave no doubt that appellant was an aider and abettor in the perpetration of the crime charged.
 

 Appellant’s second major contention is that there was a reversible error in that the trial court did not on its own motion instruct the jury in accordance with section 1127c of the Penal Code as follows:
 

 “The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine. ’ ’
 

 Appellant relies strongly on the ease of
 
 People
 
 v.
 
 McCord,
 
 
 *491
 
 15 Cal.App.2d 136 [59 P.2d 587], which held that the failure to give an instruction on flight was sufficient in part to support the trial court’s order granting defendant’s motion for a new trial. The reviewing court in the McCord case, however, was careful to point out the difference between the question of prejudice resulting from the omission to give an instruction on flight where the appeal is from an order by the court granting a new trial and where, as here, there is an appeal from a judgment of conviction. In the former situation the appellate court recognized that much less by way of prejudice is required before a trial court may grant a motion for a new trial than where the appeal is from a judgment. Said the court at page 140: ". . . Appellant contends, however, that the error in failing to give such instruction was not prejudicial to respondent. In discussing this contention, appellant seems to have overlooked the nature of this appeal. It is not an appeal from the judgment but is an appeal from the order granting a new trial. The question of whether error is prejudicial is a question for the determination of the trial court in ruling upon the motion for new trial and the trial court is allowed a wide discretion in making its determination of this question. Where there is error in the record and the trial court grants a new trial because of such error, its ruling should not be disturbed unless it clearly appears that the trial court has abused its discretion....”
 

 While the instruction on flight should have been given by the court on its own motion, we do not believe that failure to give such an instruction was harmful to appellant. Bather do we believe that its omission was more favorable than harmful to him. We believe that in view of the fact that appellant admitted he drove Baillie from the scene of the crime an instruction on flight could only have been more damaging to his defense.
 

 We therefore conclude that in view of the substantial evidence in the record supporting the conviction the failure to give an instruction on flight did not constitute reversible error within the meaning of article VI, section 4%, of our state Constitution.
 

 The judgment and order are affirmed.
 

 Van Dyke, P. J., and Peek, J., concurred.
 

 Appellant’s petition for a hearing by the Supreme Court was denied June 2, I960,