[Crim. No. 4150. Fourth Dist., Div. Two. June 28, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
DOUGLAS LYNN ROY, Defendant and Appellant.

542

## COUNSEL

Andrews, Youngquist & Hummel and Raymond C. Youngquist for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**TAMURA, Acting P. J.** — On an information charging him with three counts of murder (Pen. Code, § 187), defendant was acquitted on one count, found guilty of second degree murder on two counts, and sentenced to state prison on each of the two counts, sentences to run concurrently.[1]

---

[1]Since the judgment is silent as to how the sentences are to run, they are concurrent by operation of law. (Pen. Code, § 669; *People* v. *Reed,* 241 Cal.App.2d 102, 108 [50 Cal.Rptr. 300].)

On the night of July 22, 1969, defendant and his wife attended a party at Daniel Machain's residence in Fontana. Mike and Vivian Cobern and Frank and Barbara Hubka were among the guests present. Daniel Machain, Mike Cobern and Frank Hubka were later to be the victims of the homicides with which defendant was charged. During the evening Vivian Cobern became intoxicated and went to one of the bedrooms to lie down. Machain later accused defendant of having "raped" Vivian while she was "passed out" in the bedroom and ordered defendant to leave the party. Defendant and his wife left and, according to their testimony, arrived home about 12:30 a.m. and went directly to bed, fully clothed. Other evidence indicated defendant left the party some time after 1 a.m.

After defendant left the party, Cobern, Machain, and Hubka decided to go to defendant's house to "talk" to him about the alleged rape. The three, accompanied by their wives, drove to defendant's house in Cobern's Camaro. They arrived about 1:30 a.m. and parked in defendant's driveway. According to the wives, just as they arrived they saw defendant enter the house. They testified the three men left the car, went to the front porch, knocked, and were admitted by defendant's wife.

Defendant and his wife were the only surviving witnesses to the events which occurred within the house. Defendant's wife testified the first thing she recalled was being dragged into the living room by Machain and Cobern and of seeing defendant fighting a third man. She testified that Machain and Cobern were shouting they were going to rape and kill her, that defendant ran to a back room to get his shotgun, that Hubka ran out of the house through the back door, and that Cobern pursued defendant. Defendant testified just as he got his gun and shells he heard a window crash and that he fired through that window, and that by this time the others had left the house.

The versions of the occurrences outside the house were somewhat confused and conflicting. However, there was evidence that Machain was holding defendant's wife by the throat and appeared to be forcing her to an open door of the Camaro. Defendant pointed his gun at Machain and ordered him to release his wife. Machain whirled defendant's wife away from him and appeared to move forward towards defendant whereupon defendant shot him. Cobern ran to the other side of the car saying, "We're going, we're going." Defendant bent over Machain's body shouting, "You want some more, you want some more." He then turned his gun toward Cobern and shot him. Hubka was crouching near the other side of the car; defendant shouted, "Come on, come on," and shot him also. The victims all died instantly.

Immediately following the shootings defendant got into the Camaro,

pushed Cobern's body out of the car with his foot, and drove off. A neighbor who witnessed the shootings from his house flagged a passing patrol car. During the ensuing high speed chase defendant's car went into a spin and stalled; he was surrounded by police and ordered out of his car with his hands up. He exited with the shotgun in his hands saying, "I was trying to protect my wife; they were trying to rape her. I killed two of the sons of bitches; I hope I killed all of them," and threatened the police. He was eventually subdued and taken into custody.

The jury found the defendant not guilty as to the victim Machain but guilty of second degree murder as to Cobern and Hubka.

Defendant assigns numerous grounds for reversal but, as we view them, his principal contentions are (1) errors and inadequacies in the instructions, particularly as they relate to the defense of diminished capacity and unconsciousness; (2) erroneous evidentiary rulings; and (3) insufficiency of the evidence to support the conviction.

## I

Defendant's main attacks on the judgment relate to claimed errors and inadequacies in the instruction on diminished capacity. There was evidence that defendant consumed a considerable quantity of beer and hard liquor at the party and was "pretty well intoxicated."

The court rendered the entire *Conley* instruction on diminished capacity (*People* v. *Conley,* 64 Cal.2d 310, 324, fn. 4 [49 Cal.Rptr. 815, 411 P.2d 911]), omitting portions dealing with first degree murder, with which defendant was not charged, and references to mental defect or disease. Defendant urges (1) he was entitled to an instruction on diminished capacity from mental disease or defect, and (2) the instruction as rendered erroneously precluded the jury from considering a verdict of involuntary manslaughter unless it found that defendant was unconscious due to voluntary intoxication.

*Diminished capacity due to mental illness or defect.*

 The court did not err in failing to include mental disease or defect in the diminished capacity instruction. There was no evidence "deserving of consideration" to alert the trial court that defendant was claiming diminished capacity by reason of mental illness or defect.

Defendant directs our attention to his testimony that about a month earlier he suffered a "concussion" for which he was hospitalized for two days when an axle struck his forehead while he was repairing a car and that at the party he felt his head "snap" while lifting his wife onto a bed. The record discloses that over the People's objection the defense was

permitted to elicit from defendant hearsay testimony as to what the doctor told him when he suffered the concussion. Defense counsel stated the evidence was offered for the limited purpose of providing "an explanation of what defendant did next," that is, to explain what defendant did after his head allegedly "snapped." Defendant testified that at the hospital "they" told him one method of diagnosing a "concussion" was to examine the pupils of the eyes to see if one was larger than the other so that when his "head snapped," he went to the bathroom to check his eyes and that it was as he was leaving the bathroom that Machain asked him what he was doing in the wrong room. (The bathroom was near the bedroom occupied by Vivian.) There was no evidence that defendant suffered a mental defect from the "concussion" or any ill effects from the fact that he felt his head "snap." In fact, defendant testified that when he checked his eyes he found them to be normal.

█ A diminished capacity instruction on the court's own motion is required only where there is evidence "deserving of consideration" sufficient to alert the trial judge that defendant is relying on that defense. (*People* v. *Small,* 7 Cal.App.3d 347, 356 [86 Cal.Rptr. 478]; *People* v. *Cram,* 12 Cal.App.3d 37, 41 [90 Cal.Rptr. 393]; see *People* v. *Tidwell,* 3 Cal.3d 82, 85-86 [89 Cal.Rptr. 58, 473 P.2d 762]; *People* v. *Graham,* 71 Cal.2d 303, 316 [78 Cal.Rptr. 217, 455 P.2d 153].) █ The evidence reviewed did not require the court, *sua sponte,* to include mental disease or defect in the diminished capacity instruction. Nor did evidence that after the killings defendant appeared "excited," "dazed," "extremely tired," and had a bowel movement in his pants require such instruction, *sua sponte.* (See *People* v. *Glover,* 257 Cal.App.2d 502, 507 [65 Cal.Rptr. 219].)

█ Defendant's further contention that he was entitled to a *sua sponte* diminished capacity instruction based on a traumatic injury is equally void of merit. Although defendant testified that while he was fighting his assailant he was hit on the head, there is no evidence the blow caused a traumatic injury. Defendant testified he immediately got up and continued to fight. At trial, he was able to recount in detail the events which followed. The facts in the instant case are unlike those in *People* v. *Alvarez,* 4 Cal.App.3d 913 [84 Cal.Rptr. 732] (defendant had been stabbed and was bleeding profusely) and *People* v. *Newton,* 8 Cal.App.3d 359 [87 Cal.Rptr. 394] (defendant had been shot in the abdomen).

*Diminished capacity due to intoxication.*

█ Defendant attacks the following paragraph of the *Conley* instruction on involuntary manslaughter which the court rendered in the instant case:

"Involuntary manslaughter is a killing in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection.

"Thus, if you find that the defendant killed while unconscious as a result of voluntary intoxication and was therefore unable to formulate a specific intent to kill or to harbor malice, his killing is involuntary manslaughter. The law does not permit him to use his own vice as a shelter against the normal legal consequences of his act. An ordinary and prudent man would not, while in possession of a dangerous weapon, permit himself to reach such a state of intoxication as to be unconscious of his actions."

Defendant complains that the instruction was erroneous because it required proof of unconsciousness before the jury could consider a verdict of involuntary manslaughter. It is urged that *People* v. *Mosher,* 1 Cal.3d 379, 390-391 [82 Cal.Rptr. 379, 461 P.2d 659], requires a supplementary involuntary manslaughter instruction, unconditioned by a finding of unconsciousness, where there is evidence of diminished capacity due to mental defect, mental illness, or intoxication.

Defendant cites CALJIC (3d ed. 1970) instruction No. 8.48 which the editors state is suggested by *People* v. *Mosher, supra,* 1 Cal.3d 379. The suggested instruction, the text of which is quoted below, does not require a finding of unconsciousness to negate the intent to kill.[2] CALJIC No. 8.47, a modified form of the *Conley* instruction, is recommended where there is evidence of unconsciousness as a result of voluntary intoxication.[3]

■■■ With due respect to the distinguished editors of CALJIC (3d ed.

---

[2]CALJIC instruction No. 8.48 reads:
"Involuntary manslaughter is the unlawful killing of a human being without malice aforethought and without an intent to kill.
"A killing is unlawful within the meaning of this instruction if it occurred:
"(1) During the commission of a misdemeanor which is inherently dangerous to human life; or
"(2) In the commission of an act ordinarily lawful which involves a high degree of risk of death or great bodily harm, without due caution and circumspection.
"There is no malice aforethought and intent to kill if by reason of diminished capacity caused by mental illness, mental defect, or intoxication, the defendant did not have the mental capacity to harbor malice aforethought and to form an intent to kill."

[3]CALJIC No. 8.47 reads:
"If you find that the defendant killed while unconscious as a result of voluntary intoxication and was therefore unable to form a specific intent to kill or to harbor malice, his killing is involuntary manslaughter.
"When a person voluntarily induces his own intoxication to the point of unconsciousness, he assumes the risk that while unconscious he will commit acts inherently dangerous to human life or safety. Under such circumstances, the law implies criminal negligence."

1970), it is our opinion that insofar as the defense of diminished capacity due to voluntary intoxication is concerned, the suggested CALJIC No. 8.48, if we read it correctly, is defective in its failure to include the requirement of unconsciousness.[4]

■ It is settled that diminished capacity short of unconsciousness resulting from voluntary intoxication may rebut the existence of malice and thereby reduce murder to voluntary manslaughter. (*People* v. *Graham, supra,* 71 Cal.2d 303, 315-316; *People* v. *Castillo,* 70 Cal.2d 264, 269-270 [74 Cal.Rptr. 385, 449 P.2d 449]; *People* v. *Conley, supra,* 64 Cal.2d 310, 323.) But under cases antedating *Mosher,* a defendant asserting the defense of diminished capacity due to voluntary intoxication was entitled to a supplemental instruction on involuntary manslaughter only where there was evidence that he was intoxicated to the degree of unconsciousness. In *People* v. *Hayes,* 276 Cal.App.2d 528, 531-532 [80 Cal.Rptr. 893] (hg. den.), the court squarely held that "an instruction on nonstatutory involuntary manslaughter" due to diminished capacity from voluntary intoxication is required "only where the defendant introduces evidence 'deserving of consideration,' that at the time of the commission of the crime, he was *unconscious* due to intoxication from drugs or alcohol voluntarily consumed." (Original italics.)

The rule as expressed in *Hayes, supra,* implicitly follows from *People* v. *Conley, supra, People* v. *Graham, supra,* and *People* v. *Castillo, supra.* While it is true that in *Conley* and *Graham,* the accused claimed he was unconscious, the evidence was such that the jury could have found that intoxication had not reached the stage of unconsciousness. Yet in each case the only supplementary involuntary manslaughter instruction required on retrial was the one conditioned upon a finding of unconsciousness. In *Graham, supra,* defendant testified that he was unconscious from the use of LSD and alcohol and was suffering from hallucinations. However, there was evidence that on the night of the crime he did not appear to be under the influence of alcohol or drugs and there was expert testimony casting doubt upon defendant's claim he was suffering from hallucinations. On the evidence the jury could have found that defendant was intoxicated but not to the degree of unconsciousness. The court reversed the first degree murder conviction for failure to give both the voluntary and involuntary manslaughter instructions in the context of diminished capacity. With respect to involuntary manslaughter, the only direction given for retrial was that the following modified form of the *Conley* instruction should be given: " 'If you find that the defendant killed while unconscious

---

[4]CALJIC No. 8.48 is not subject to the same criticism insofar as mental illness or defect is concerned because unconsciousness from such causes would be a complete defense.

as a result of voluntary intoxication and was therefore unable to formulate a specific intent to kill or to harbor malice, his killing is involuntary manslaughter. When a man voluntarily induces his own intoxication to the point of unconsciousness, he assumes the risk that while unconscious he will commit acts inherently dangerous to life and limb. Under such circumstances, the law implies criminal negligence.' " (*People* v. *Graham, supra,* 71 Cal.2d 303, 317, fn. 4.) In *People* v. *Castillo, supra,* 70 Cal.2d 264, where there was evidence of intoxication but not to the degree of unconsciousness, the court reversed only for failure to give the nonstatutory voluntary manslaughter instruction.

We do not read *People* v. *Mosher, supra,* 1 Cal.3d 379, as intending to effect a change in the law with respect to diminished capacity due to voluntary intoxication. In *Mosher* there was evidence of diminished capacity due to mental illness or defect and intoxication as well as evidence of unconsciousness. The court reversed the first degree murder conviction for failure to instruct on voluntary and involuntary manslaughter in the context of diminished capacity. With respect to the failure to give the involuntary manslaughter instruction, the court stated: "Once facts are adduced which would constitute a basis for finding that defendant had *both* diminished capacity due to mental defect, mental illness, or intoxication, *and* also *unconsciousness* or lack of the intent to kill, the trial court fails in its duty to instruct the jury as to all issues of law raised by the evidence (*People* v. *Jackson* (1963) 59 Cal.2d 375, 380 [29 Cal.Rptr. 505, 379 P.2d 937]) if it does not supplement the statutory definition of involuntary manslaughter. It must also instruct that if, due to diminished capacity the defendant had neither malice nor intent to kill, the offense could be no greater than involuntary manslaughter. Without this instruction the trial court deprives defendant of his 'constitutional right to have the jury determine every material issue presented by the evidence.' (*People* v. *Modesto, supra,* 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33].)

"If upon retrial the evidence indicates that defendant was *unconscious* at the time of the offense *due to voluntary intoxication,* the trial judge should give this supplemental instruction on involuntary manslaughter. (*People* v. *Graham, supra,* 71 Cal.2d 303, 316-317; *People* v. *Baker* (1954) 42 Cal.2d 550, 575 [268 P.2d 705].) In addition, if upon retrial the evidence indicates that defendant was unconscious at the time of the offense for reasons outside his control, the trial court should render an instruction on unconsciousness. (Pen. Code, § 26, subd. 5; *People* v. *Wilson* (1967) 66 Cal.2d 749, 761 [59 Cal.Rptr. 156, 427 P.2d 820].)" (*People* v. *Mosher, supra,* 1 Cal.3d 379, 391.) (Italics supplied.)

Although some of the language in *Mosher* may be susceptible to the interpretation apparently placed upon it by the editors of CALJIC, in-

sofar as diminished capacity due to voluntary intoxication is concerned, a close reading of *Mosher* and the authorities it cited indicate, not a departure from earlier decisions, but a reaffirmance of them. This conclusion is fortified by the more recent case of *People* v. *Tidwell, supra,* 3 Cal.3d 82. Defendant there claimed he was drunk, fell asleep, and had only a vague recollection of the events. However, his testimony was contradicted by a confession he had made to the police. The Supreme Court nevertheless held the evidence was at least sufficiently "deserving of consideration" to have required instructions on "nonstatutory" voluntary and involuntary manslaughter. The court explained the need for the involuntary manslaughter instruction by stating at page 86:

"The trial court also erred in failing to instruct the jury on the aspects of involuntary manslaughter in the context of a diminished capacity defense. As stated in *People* v. *Graham, supra,* 71 Cal.2d 303, 316-317: 'Intoxication may so diminish a person's mental capacity that he is unable to achieve a specific state of mind requisite to any offense; yet if the intoxication is voluntarily induced, it can never excuse homicide. [Citation.] Thus, the requisite element of criminal negligence is deemed to exist irrespective of unconsciousness, and a defendant stands guilty of involuntary manslaughter if he voluntarily procured his own intoxication.'

"*If,* upon retrial, *there is evidence which indicates that defendant was unconscious at the time of the offenses due to voluntary intoxication, the trial court should instruct on involuntary manslaughter as specified in People* v. *Graham, supra,* 71 Cal.2d 303, 317, footnote 4. In addition, if there is evidence which indicates that defendant *was unconscious for reasons outside his control,* the trial court should instruct on unconsciousness. (Pen. Code, § 26, subd. 5; *People* v. *Mosher, supra,* 1 Cal.3d 379, 391; *People* v. *Wilson,* 66 Cal.2d 749, 761 [59 Cal.Rptr. 156, 427 P.2d 820].)" (Italics supplied.)

█ We conclude the *Conley* instruction on involuntary manslaughter rendered in the instant case properly and adequately covered the defense of diminished capacity due to voluntary intoxication. █ We believe the rationale for the requirement that voluntarily induced intoxication must reach the stage of unconsciousness in order to rebut the intent to kill lies in the elemental nature of the behavior involved. As the Supreme Court stated in *People* v. *Hood,* 1 Cal.3d 444, at page 458 [82 Cal.Rptr. 618, 462 P.2d 370]: "Alcohol apparently has less effect on the ability to engage in simple goal-directed behavior, although it may impair the efficiency of that behavior. In other words, a drunk man is capable of forming an intent to do something simple, such as strike another, unless he is so drunk that he has reached the stage of unconscious-

ness." ■ The policy considerations which formed the bases for *Hood* support the rule requiring evidence of unconsciousness where a defendant in a homicide case seeks to rebut an intent to kill by evidence of voluntary intoxication.[5]

*Unconsciousness:*

■ Defendant's contention that the court should have given an instruction on unconsciousness as a complete defense under Penal Code, section 26, subdivision 5, is without merit. There was no evidence that defendant was unconscious, either from intoxication or from causes beyond his control, during the shootings. While the judge did give the *Conley* instruction on involuntary manslaughter, we are certain he did so through a commendable abundance of caution. ■ In any event unconsciousness due to voluntarily induced intoxication is never a complete defense to a homicide. (*People* v. *Graham, supra,* 71 Cal.2d 303, 316.)

*Other attacks upon instructions:*

■ Defendant's contention that the court gave instructions in violation of *People* v. *Ireland,* 70 Cal.2d 522 [75 Cal.Rptr. 188, 450 P.2d 580], is devoid of merit. In instructing on second degree murder the court omitted the felony murder portions condemned in *Ireland.* However, defendant complains that the use of the word "felony" in the following instruction defining malice violated *Ireland:* "Malice is implied (1) when the killing results from an act involving a high degree of probability that it will result in death, which act is intentionally done for a base, antisocial motive and with wanton disregard for human life; or (2) when the killing is a direct causal result of the perpetration or the attempt to perpetrate a felony inherently dangerous to human life." The jury could not have been misled by the instruction. Unlike *Ireland* defendant was not charged with felony murder, instructions on second degree felony murder identifying the felony as assault with a deadly weapon and defining its elements were not given, and the prosecutor did not argue a theory of felony murder.

Defendant further contends the definition of malice violated *Ireland* by permitting the jury to imply malice "from an act involving a high degree of probability that it will result in death, which act is intentionally done for a base, antisocial motive and with wanton disregard for human life." That portion of the instruction does not violate *Ireland. Ireland* did not forbid an instruction on implied malice; it condemned the device of using proof of an underlying felony, such as assault with a deadly weapon, as

---

[5]We recognize that the offense involved in *People* v. *Hood, supra,* 1 Cal.3d 444, assault with a deadly weapon, has since been squarely held to be a general intent crime. (*People* v. *Rocha,* 3 Cal.3d 893, 899 [92 Cal.Rptr. 172, 479 P.2d 372].)

a substitute for proof of malice. In the instant case defendant admittedly shot and killed the victims. ▆▆▆ When a killing is proved to have been committed by the accused, and nothing further is shown, the presumption is that it was malicious. (*People* v. *Brunk,* 258 Cal.App.2d 453, 456 [65 Cal.Rptr. 727].)

▆▆▆ Defendant contends the trial court erred in failing to give the flight instruction contained in Penal Code section 1127c.[6] The contention is without merit. The instruction could have been more helpful to the prosecution than to the defendant. In the circumstances of the present case the failure to give the instruction, if error, was clearly nonprejudicial. (*People* v. *Sheldon,* 254 Cal.App.2d 174, 181 [61 Cal.Rptr. 778]; *People* v. *Williams,* 179 Cal.App.2d 487, 491 [3 Cal.Rptr. 782].)

It would unduly extend this opinion and serve no useful purpose to discuss the remaining claimed instructional errors. We have examined them and find them to be without substance. The record discloses that the court fully and fairly instructed the jury on every material issue.

## II

▆▆▆ Defendant complains the court erroneously admitted evidence of "other crimes" by admitting evidence of statements made by Machain concerning the alleged rape of Vivian Cobern, evidence that defendant drove off in the victim's car immediately after the shooting, evidence of threats against the officers, and a statement made by defendant to some prisoners at jail while he was being booked to the effect, "All right, I'll remember you. I'll get you later" when he was refused a cigarette. Other than Machain's statement concerning the alleged rape, the foregoing evidence was received without objection. Defendant is, therefore, precluded from raising the issue of admissibility on appeal. Moreover, the evidence all pertained to a continuing series of events immediately preceding and following the killings and was relevant to show the state of mind of the victims and to explain their conduct. (Evid.Code, § 1250[7]; see *People* v.

---

[6]Penal Code section 1127c provides: "In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially as follows:

"The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine.

"No further instruction on the subject of flight need be given."

[7]Evidence Code section 1250 provides:

"(a) Subject to Section 1252, evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent,

*Spencer,* 71 Cal.2d 933, 945-946 [80 Cal.Rptr. 99, 458 P.2d 43]; *People v. Lew,* 68 Cal.2d 774, 779 [69 Cal.Rptr. 102, 441 P.2d 942].)

■ Defendant's contention that statements made by him as he stepped out of the car when he was apprehended should have been excluded on *Miranda* grounds is without substance. Apart from the fact that defendant interposed no objection to the admissibility of those statements, they were voluntarily and spontaneously made; they were not the result of police interrogation or coercion. It would be the height of absurdity to suggest that the police should have administered a *Miranda* warning while they were attempting to subdue an armed man in the circumstances here presented.

### III

■ Defendant urges the evidence was insufficient to support the second degree murder convictions. He argues that the evidence showed justifiable homicide or at most, voluntary manslaughter.

■ As a reviewing court we must assume the existence of every fact reasonably deducible from the evidence in support of the judgment. (*People v. Bard,* 70 Cal.2d 3, 5 [73 Cal.Rptr. 547, 447 P.2d 939]; *People v. Daugherty,* 40 Cal.2d 876, 885-886 [256 P.2d 911]; *People v. Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) The test is whether the evidence supports conviction, not whether it would support innocence. (*People v. Spencer, supra,* 71 Cal.2d 933, 937.) ■ Sufficiency of provocation and whether a defendant in fact acted under such provocation are questions of fact for the jury. (*People v. Wells,* 10 Cal.2d 610, 623 [76 P.2d 493].) ■ In determining whether the element of provocation is sufficient to rebut malice "the fundamental of the inquiry is whether or not the defendant's reason was, at the time of his act, so disturbed or obscured by some passion—not necessarily fear *and never, of course, the passion for revenge*—to such an extent as would render ordinary men of average disposition liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgment." (Italics supplied.) (*People v. Logan,* 175 Cal. 45, 49 [164 P. 1121]; *People v. Morse,* 70 Cal.2d 711, 734-735 [76 Cal.Rptr. 391, 452 P.2d 607].)

plan, motive, design, mental feeling, pain or bodily health) is not made inadmissible by the hearsay rule when:

"(1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action; or

"(2) The evidence is offered to prove or explain acts or conduct of the declarant.

"(b) This section does not make admissible evidence of a statement of memory or belief to prove the fact remembered or believed."

If defendant's testimony were believed, the jury could have returned a voluntary manslaughter verdict or even acquittals. However, there was evidence casting doubt on the credibility of defendant's testimony. Although he testified he got home around 12:30 a.m., there was evidence he arrived just before the victims. The victims' wives so testified, the lights were still on in the house, and the front door was apparently unlocked. (Defendant's wife testified they always left the doors unlocked.) The foregoing evidence cast doubt on defendant's testimony that the victims suddenly and unexpectedly entered the house and that he and his wife first became aware of the intruders after the fight started and the wife was being dragged from the room.

There was evidence from which the jury could have found that the killings of Cobern and Hubka resulted from "the passion for revenge" rather than self defense or defense of his wife. There was evidence from which it could be inferred that the victims were retreating from the moment they left the house and that Machain was using defendant's wife as a shield to protect himself. Defendant's wife testified she was being used as a shield. There was evidence from defendant and others that one shot had been fired in the house. One of the wives testified that Cobern emerged from the house with his hands up saying they were going. There was evidence that after defendant shot Machain, he bent over his body saying, "Now are you satisfied or do you want some more—you want some more?" and that when he turned and shot Cobern the latter was at the other side of the car saying, "We're leaving." There was evidence that when defendant saw Hubka crouching near the other side of the car in an apparent attempt to flee, defendant shouted, "Come on, come on," and shot him when he raised his head. There was no evidence that any of the victims was armed or even appeared to be armed.

Malice necessary to support a second degree murder conviction may be implied "when the circumstances attending the killing show an abandoned and malignant heart." (Pen. Code, § 188; *People* v. *Butts,* 236 Cal.App.2d 817, 827 [46 Cal.Rptr. 362].) In the present case, there was substantial evidence to support an implied finding of malice. We cannot say that the evidence of provocation, as a matter of law, rebutted the presumption of malice arising out of the intentional shootings of the victims.

### IV

Defendant's remaining contentions merit but brief comment. There is no merit to his contention that the court abused its discretion in failing to sequester the jury during trial. Sequestration is a matter resting in the

sound discretion of the trial court. (*People v. Burwell,* 44 Cal.2d 16, 33 [279 P.2d 744]; Pen. Code, § 1121.)

■■■ The contention that the court should have granted a mistrial because of an outburst on the stand by the wife of one of the victims is equally without merit. The witness was promptly admonished and conducted herself properly after the single incident and the jury was promptly admonished to disregard the statement she made. We find no abuse of discretion in the denial of the motion for mistrial.

■■■ The record does not support defendant's contention he was denied effective aid of counsel. The contention that trial counsel's failure to object to the introduction of statements made by defendant when he was captured demonstrated counsel's inadequacy is without substance. As we have noted, the statements were not objectionable on *Miranda* grounds. ■■■ The argument that defendant was deprived of effective aid of counsel because trial counsel failed to develop a theory of diminished capacity based upon a prior "concussion" is likewise devoid of merit. Unlike *In re Saunders,* 2 Cal.3d 1033 [88 Cal.Rptr. 633, 472 P.2d 921], there is nothing in the record to show that trial counsel had not investigated a possible defense of diminished capacity based upon defendant's past medical history.

Judgment affirmed.

Kerrigan, J., and Gabbert, J., concurred.

A petition for a rehearing was denied July 14, 1971, and appellant's petition for a hearing by the Supreme Court was denied August 25, 1971.