[Crim. No. 22480. Second Dist., Div. One. Aug. 8, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY AMOS OTIS, Defendant and Appellant.

COUNSEL

Edward Barker, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, and Robert F. Katz, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**LILLIE, J.**—Defendant was charged with the murder of one Snell, and that during the commission of the offense he used a firearm, to wit, a shotgun. A jury convicted him of voluntary manslaughter, a lesser and included offense, and found he used a shotgun in the commission of the crime as alleged. A motion to strike the factual finding pursuant to section 12022.5, Penal Code[1] (use of a shotgun) was denied; "the armed allegation having been found true," defendant was sentenced to prison for the prescribed term. Defendant appeals from the judgment.

■ While the sufficiency of the evidence to support the judgment is not challenged, defendant contends that the jury, had it been given an instruction (CALJIC No. 8.47) requested by him, could have found that the homicide constituted only involuntary manslaughter. In light of such claim, we summarize the relevant facts adduced at trial.

On the afternoon of the killing, defendant and his victim (Snell), both of whom had been drinking, encountered each other at a crap game then in progress in Pasadena. They had met on at least one previous occasion (a few days prior to the shooting) when Snell threatened to hit defendant with a wine bottle unless the latter gave him some money. There was further testimony that defendant was acquainted with other acts on his part tending to show that Snell was a man of violence. In the course of the crap game defendant witnessed a verbal altercation between Snell and another player ("Big Bill"); when a similar altercation developed between Snell and defendant, the latter called to his friends to get into his car. As the car was leaving, Snell ran alongside the vehicle and tried to climb in; when defendant finally stopped the car, Snell dove into the back seat. Once in the car, Snell jabbered, used obscene language and, at one point, reached forward and struck defendant on the side of the face; the blow caused defendant to lose control of his car which rear-ended another vehicle. Following a discussion of the accident with the parties in the other car, defendant drove on to his home. As he got out of the car Snell told defendant to "Bring me a sandwich or I'll cut you." When defendant reappeared from his house, he had a rifle in his hand; he told Snell to get out of the car and

---

[1] Section 12022.5 provides in pertinent part that "Any person who uses a firearm in the commission or attempted commission of a robbery, assault with a deadly weapon, murder, rape, burglary, or kidnapping, upon conviction of such crime, shall, in addition to the punishment prescribed for the crime of which he has been convicted, be punished by imprisonment in the state prison for a period of not less than five years. Such additional period of imprisonment shall commence upon expiration or other termination of the sentence imposed for the crime of which he is convicted and shall not run concurrently with such sentence., . . ."

"go away." Snell, who was defendant's physical superior replied, "I don't have to go no goddam place, you [obscenity], don't you know I'll kill you." When he made a lunge for defendant, the latter shot him through the armpit; he was dead upon arrival at the emergency hospital.

Defendant testified that he had previously consumed three cans of beer and ten ounces of wine. There was also testimony by a qualified forensic chemist, given defendant's physical charateristics (age and weight) and certain other hypothetical facts including the time element and type of liquor consumed, that defendant's alcoholic consumption that day would place his blood content between .20 and .25 percent; and that at the former point (.20) "most persons have reached a condition that we would describe as being drunk, we are no longer talking about being impaired or being under the influence, but we are talking about being drunk, and at point two five [.25] the habitual drinker would generally be drunk."

Appellant contends that the foregoing evidence justified the requested instruction CALJIC No. 8.47[2] particularly in view of language found in *People* v. *Graham,* 71 Cal.2d 303, 310 [78 Cal.Rptr. 217, 455 P.2d 153], namely, that "evidence tending to show unconsciousness caused by voluntary intoxication requires the trial court to instruct the jury on involuntary manslaughter." Contrary to appellant's claim, neither his testimony nor that of his expert witness tends to show that his voluntarily induced intoxication reached the stage of unconsciousness which, under the decisions, would rebut the intent to kill. This point, including the following quote from *People* v. *Hood,* 1 Cal.3d 444, 458 [82 Cal.Rptr. 618, 462 P.2d 370], was rather exhaustively discussed in *People* v. *Roy,* 18 Cal.App.3d 537, 547 et seq. [95 Cal.Rptr. 884]: "Alcohol apparently has less effect on the ability to engage in simple goal-directed behavior, although it may impair the efficiency of that behavior. In other words, a drunk man is capable of forming an intent to do something simple, such as strike another, unless he is so drunk that he has reached the stage of unconsciousness." Thus while there may have been testimony in the instant case that defendant was drunk, no evidence of unconsciousness was offered. Defendant himself testified that he was able to drive without difficulty and take care of himself; he further testified that he understood what was going on and that the alcohol consumed did not in any way impair his ability to think. As in *People* v. *Roy,* 18 Cal.App.3d 537, 550 [95 Cal.Rptr. 884], "There was no evidence that defendant was unconscious, either from intoxication or from causes beyond his control, during the shootings."

---

[2]"If you find that the defendant killed while unconscious as a result of voluntary intoxication and was therefore unable to form a specific intent to kill or to harbor malice, his killing is involuntary manslaughter."

However, reading CALJIC No. 8.48, the court did instruct the jury on the matters above discussed. The closing paragraph of said instruction declares "There is no malice aforethought and intent to kill if by reason of diminished capacity caused by mental illness, mental defect, *or intoxication,* the defendant did not have the mental capacity to harbor malice aforethought and to form an intent to kill." (Italics added.) Likewise, the jury was given CALJIC No. 8.77 which provides, in part, that they could find defendant guilty of neither murder nor voluntary manslaughter if they determined that he had "substantially reduced mental capacity, whether caused by mental illness, mental defect, *intoxication,* or any other cause" (italics added) which affected his ability to form any of the mental states "that are essential elements of murder and voluntary manslaughter." Under the circirmstances, the giving of such instructions redounded to defendant's benefit rather than to his detriment; consequently, if the jury's verdict was based thereon, defendant was not thereby prejudiced for the reason that they were more favorable to defendant than those to which he was entitled.

Relying on *People* v. *Washington,* 17 Cal.App.3d 470 [94 Cal.Rptr. 882] (erroneously cited as 62 Cal.2d 777), appellant next contends that he was entitled to a specific finding on the applicability of section 12022.5 —as indicated by its provisions (fn. 1, *supra*)—because of the severity of the additional punishment therein prescribed. In *Washington* the information accused the defendant of robbery and charged that he was then armed with a deadly weapon, a .22 caliber revolver; in a court trial he was found guilty of robbery in the first degree, it being further found that he was armed with a deadly weapon; in the judgment, subsequently sentencing defendant to state prison, it was recited that defendant had been found guilty of first degree robbery and found to have been armed as alleged, i.e., with a deadly weapon (a revolver).  As pointed out by the *Washington* court, a companion statute (§ 12022) imposing increased penalties for crimes committed under aggravated circumstances is broader in scope than section 12022.5—a table illustrating such differences appears on page 474—thus, the former applies where a person is *armed* with a *deadly weapon* in the course of any felony, while the latter becomes applicable only where he *uses* a *firearm* in the commission of one of *six felonies* therein enumerated. It was concluded that the judgment (sentencing defendant to prison and finding him to have been "armed with a deadly weapon") was ambiguous for failure to state explicitly whether there had been a violation of section 12022 or section 12022.5; accordingly, the cause was remanded with instructions to make a specific finding on the application of the latter section to defendant's conduct in the circum-

stances. ▮ In the instant case, while the judgment recites that "the armed allegation [has] been found true," there are other matters which clearly reflect the court's determination that section 12022.5 applied to the facts of defendant's case. Thus, at the time of sentencing the court orally observed that "[T]he jury finding as to the use of the firearm was a perfectly valid and proper finding. I don't see any justification for the Court to setting it aside." Also, the judgment includes the recital that "Defendant's motion to strike factual finding pursuant to Penal Code section 12022.5 . . . is denied." In our view, the above determinations substantially comply with the rule of *Washington;* accordingly, no good purpose would be served by a remand for a more literal (or express) observance of the principle there involved.

Since, as already noted, section 12022.5 only applies to six enumerated felonies, appellant next contends that it is not applicable to voluntary manslaughter—not one of those so specified.[3] For reasons which follow, we consider his claim to be untenable. As stated in *People* v. *Chambers,* 7 Cal.3d 666, 671 [102 Cal.Rptr. 766, 498 P.2d 1024], "The application of statutes providing additional penalty for a defendant convicted of committing a crime under aggravated circumstances has long been a question of statutory interpretation. [Citations.]" In the same case the court traced the history of section 12022.5, pointing out that it was enacted after its decision in *People* v. *Floyd,* 71 Cal.2d 879 [80 Cal.Rptr. 22, 457 P.2d 862], wherein the court was concerned with section 12022 (provisions of which have heretofore been mentioned); it was the holding in *Floyd* that such section was inapplicable to the crime of first degree robbery since the use of a deadly weapon was an integral part of that offense. Thereafter, "By its enactment of section 12022.5 the Legislature provided an additional punishment for a wrongdoer who 'uses a firearm' in the commission or attempted commission of certain felonies and it left no doubt as to the applicability of such punishment even in those cases where 'the use of a weapon' is also an element of the offense." (*Supra,* 7 Cal.3d at p. 672.)[4] It was contended by defendant Chambers that prior to his arrest by police officers he had only pointed his gun at his victim and demanded money; but, the court noted, "The obvious legislative intent to deter the use of firearms in the commission of the specified felonies requires that 'uses' be broadly construed." (*Supra,* p. 672.)

[3] The six felonies are robbery, assault with a deadly weapon, murder, rape, burglary and kidnaping.

[4] Thus, the final paragraph of section 12022.5 provides that "This section shall apply even in those cases where the use of a weapon is an element of the offense."

■ By parity of reasoning it must be concluded that "murder" as used in section 12022.5 includes voluntary manslaughter (§ 192, subd. 1) which has been defined as "the intentional killing of a human being without malice." (*People* v. *Small,* 7 Cal.App.3d 347, 355 [86 Cal.Rptr. 348].) Murder and manslaughter are both homicides, the main distinction being that while the latter offense is committed without malice aforethought, it is nonetheless, an included offense. "The test in this state of a necessarily included offense is simply that where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense." (*People* v. *Greer,* 30 Cal.2d 589, 596 [184 P.2d 512].)[5] Even though defendant was convicted of such lesser offense, the fact remains—and the jury so found—that a firearm was used in its commission. As an appellate court, we are "required to read the statute in the light of the objective sought to be achieved by it, as well as the evil sought to be averted. [Citations.]" (*People* v. *Carroll,* 1 Cal.3d 581, 584 [83 Cal.Rptr. 176, 463 P.2d 400].)

As indicated in *People* v. *McDaniels,* 25 Cal.App.3d 708, 714 [102 Cal.Rptr. 444], the enactment of section 12022.5 reflected the "[alarm] at the very great increase in recent years in the number of crimes in which a firearm was used." Accordingly, included in section 12022.5 were such crimes as murder, rape and burglary where the use of a firearm is not an element of the offense; "the evil sought to be averted" was the potential use of firearms with its consequent risk of harm to the victims of "a . . . murder, rape, burglary . . ."—the terms being used in the generic sense. Being of the same genus as murder, the crime of voluntary manslaughter must be held to have been within the contemplation of the Legislature when it enacted the subject statute; to hold otherwise would simply frustrate the purposes behind its enactment.[6]

In view of the foregoing determinations, we do not reach the further point that section 12022, Penal Code, is also applicable to the circumstances of the case and that, in the alternative, defendant may (or may not) be validly sentenced thereunder.

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.

---

[5]The *Greer* case involved a double jeopardy problem with which we are not here concerned.

[6]See the recent case of *People* v. *Provencher, ante,* page 546 [108 Cal.Rptr. 792], holding that section 12022.5 does not apply to assault with intent to murder which in that case may subject defendant to the application of section 12022, Penal Code, which prescribes additional punishment of five to ten years in the state prison.