Filed 10/10/24  P. v. Moreno CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E081397 |
| v. | (Super.Ct.No. FVI21001747) |
| RODOLFO CASTRO MORENO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Debra Harris, Judge.  Affirmed.

Matthew A. Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, Junichi P. Semitsu and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Rodolfo Castro Moreno challenges the sufficiency of the evidence to support the trial court's finding he violated probation by keeping a pocketknife in his bedroom. Defendant had previously retreated to the bedroom during a family argument and then emerged to twice grab kitchen knives, first stabbing a table with one so that it stuck in the table. Then, despite a brief interlude, he threw the second knife at his 13-year-old granddaughter. She had to duck to avoid the knife. In light of these events, we affirm the trial court's determination that keeping a knife close at hand in the bedroom violated defendant's probation terms.

FACTUAL AND PROCEDURAL BACKGROUND

On June 16, 2021, a San Bernardino County Sheriff's Department deputy responded to a domestic disturbance call at defendant's residence. The call indicated defendant kicked a bedroom door off its hinges while yelling at family members and striking walls.

Upon arrival, the deputy found the family had barricaded the front door with a large dresser to prevent defendant from reentering the home. One victim, I.C., identified himself as defendant's stepson and reported defendant had a lengthy history of physical violence in his 25-year dating relationship with I.C.'s mother (mother hereafter referred to as "V1"). Defendant acted aggressively toward family members about once or twice a week, and his recent conduct included unpredictable, explosive, and violent behavior.

The other victims, including defendant's 13-year-old granddaughter (hereafter "V2"), described the incident that led to the police call. An argument arose in the kitchen

2

regarding V2's exclusion from an upcoming trip. The argument also touched on defendant's "importance within the home," which, according to V1, V2 questioned. I.C. and V1 paid the bills in the home.

During the argument, defendant "storm[ed]" into his bedroom, then returned, grabbed a large kitchen knife, and stabbed it into the wooden kitchen table, where it stuck. He then advanced on V2, who managed to grab the knife and retreat to her room, hiding it there. V1 had followed defendant, but defendant struck her in the face with the back of his hand.

When V2 came out of her room, defendant was in the kitchen. Defendant grabbed another knife, a "large chef's kitchen knife." From his position standing close to V1, he threw the knife across the kitchen counter at V2. The knife missed her because she ducked. The knife struck a lamp hanging over the counter and landed near V2. V2 fled to her room and locked the door. Defendant then "hit her door until it broke" and entered the room, where V2 hid in her closet. Defendant took V2's "electronics" to his bedroom. I.C., who was in his own room and confined to a wheelchair, called law enforcement. Overhearing this, defendant responded, "'Make sure they come armed.'"

Defendant was not at the home when the deputy arrived. The victims' report included concerns about defendant's alcohol use fueling his aggressive conduct.

The district attorney's office filed a felony complaint against defendant alleging assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1), count 1; all further

3

statutory references are to this code) and battery on a victim with whom he had a dating relationship (§ 243, subd. (e)(1)), count 2.

On August 11, 2021, pursuant to a plea agreement, defendant pled no contest to assault by means likely to cause great bodily injury. (§ 245, subd. (a)(4), count 3.) Consistent with the plea, the trial court dismissed counts 1 and 2 and sentenced defendant to time served of 20 days in jail, plus 36 months on probation. Defendant's probation terms included the following: "Neither possess nor consume any alcoholic beverages," and "Neither possess nor have under your control dangerous or deadly weapons."

Probation compliance checks conducted in-person and by telephone in July and August 2022, and in January 2023, resulted in probation officers reminding defendant of the alcohol prohibition.

On March 3, 2023, during a home compliance check, probation officers found a pocketknife in defendant's dresser drawer in his bedroom. Defendant was living in the same home where he had thrown a knife at V2 after first withdrawing to his bedroom during the argument. The officers also found an empty beer can in the kitchen trash can, which defendant denied was his, and five unopened alcoholic beverages in a refrigerator in the back yard. The officers arrested defendant for violating probation. A person at the residence identified as defendant's son told the officers that defendant "was not going to change his ways."

Defendant's probation officer recommended against revoking his probation at the *Vickers* hearing. (See *People v. Vickers* (1972) 8 Cal.3d 451, 460-461 [revocation

4

proceedings].) The trial court agreed. On the officer's recommendation, the court instead reinstated probation under the original terms and conditions, but extended it to expire October 26, 2024, rather than as originally set for August 10, 2024. The court also conditioned probation on defendant serving 365 days in jail, with custody credits of 91 actual days and 90 days' conduct credit.

In making its ruling, the court explained that it was "on board" with declining to revoke probation based on the alcohol that was found. The court noted defendant's limited control in the household and that no reports indicated he was under the influence. The court expressly found however: "But he's in violation of probation. There was a knife found." The court queried, "And when you read the circumstances of the instant offense, what gives me confidence that this probationer will not throw another knife at another victim?" The court also asked how long defendant had been on probation and whether he had previously been imprisoned. Upon learning the answers were "over a year" on probation and that "this is his first felony," the court commented, "That's good." The court entered the jail and probation extension requirements noted above, and defendant now appeals.

## DISCUSSION

Defendant challenges the sufficiency of the evidence to support the trial court's conclusion he violated probation. Defendant argues, and we agree, that "[a] pocket knife is not a 'dangerous or deadly weapon' per se." He argues further, however, that "the facts

5

and circumstances surrounding its possession do not convert it to such" here. Under the deferential governing standard, the trial court could conclude otherwise.

Section 1203.2 invests in the trial court discretion to modify, revoke, or terminate probation in the interests of justice if the court, "in its judgment, has reason to believe . . . that the person has violated any of the conditions of their supervision." (*Id.*, subds. (a) & (b)(1).) The requisite proof to find a probation violation is a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 447.) We review the trial court's decision for substantial evidence, and our review under that standard is deferential. (*People v. Superior Court* (*Jones*) (1998) 18 Cal.4th 667, 681.) "In that regard, we give great deference to the trial court and resolve all inferences and intendments in favor of the judgment. Similarly, all conflicting evidence will be resolved in favor of the decision." (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848-849, fns. omitted.)

The applicable probation condition here barred defendant from "hav[ing] under your control dangerous or deadly weapons." The prohibition has "a plain commonsense meaning" that applies in two respects. (*In re R.P.* (2009) 176 Cal.App.4th 562, 570 (*R.P.*).) First, and most obviously, it precludes probationers "from possessing any item specifically designed as a weapon." (*Ibid.*) Less obviously, but still "sufficiently precise" to provide adequate due process notice, a "'no-dangerous-or-deadly-weapon' probation condition" also "limits . . . possession" of items depending on the person's intent. (*Id.* at pp. 568-570 [meaning of "'dangerous or deadly weapon' is clearly established in the law"].) Thus, the prohibition restricts having "under your control" (as

6

stated here) items "not specifically *designed* as a weapon" where there is intent "to use [it] to inflict *or threaten to inflict* . . . great bodily injury" or death.  (*Ibid.*, italics added.)

Put another way, the Supreme Court has long distinguished "'between two classes of "dangerous or deadly weapons."  There are, first, those instrumentalities which are weapons in the strict sense of the word, and, second, those instrumentalities which are not weapons in the strict sense of the word, but which may be used as such.'"  (*People v. Graham* (1969) 71 Cal.2d 303, 327 (*Graham*), abrogated on another ground in *People v. Ray* (1975) 14 Cal.3d 20, 29, fn. 7 & 32, along with diminished capacity progeny of *People v. Roy* (1971) 18 Cal.App.3d 537; see *People v. Ricardi* (1992) 9 Cal.App.4th 1427, 1433 [noting *Graham*'s demise only as to diminished capacity defense].)

As *Graham* explained regarding the two classes of dangerous or deadly weapons: "The instrumentalities falling in the first class, such as guns, dirks and blackjacks . . . are weapons in the strict sense of the word and are 'dangerous or deadly' to others in the ordinary use for which they are designed . . . ."  (*Graham*, *supra*, 71 Cal.3d at p. 327.)  The court recognized that weapons "falling into the second class, such as ordinary razors, *pocket-knives*, hatpins, canes, hammers," etc. may be "capable of being used in a 'dangerous or deadly' manner."  (*Ibid.*, italics added.)  The court also recognized regarding items in this class that, depending on the evidence, "'it may be fairly inferred . . . that its possessor intended [to hold the item] to use it as a weapon should the circumstances require.'"  (*Id.* at p. 328.)  Thus, *Graham* held the evidence there sufficient

7

to find a codefendant's shoe "could be used in a dangerous or deadly manner," but remanded for proper jury instructions. (*Id.* at p. 329.)

It was within the trial court's sound discretion to make the same finding here. Namely that, based on the kitchen incident in which defendant first collected himself in his bedroom and then emerged to grab and stab or throw knives, defendant retained his knife nearby in his dresser to use it to threaten or throw it to assert himself in a temper. As in *R.P.*, this does not make defendant's no-dangerous-or-deadly-weapon probation condition a "'strict liability prohibition'" that inevitably "punish[es] 'completely innocent' conduct." (*R.P.*, *supra*, 176 Cal.App.4th at p. 569.) As the *R.P.* court stated: "Like any other probationer, if R.P. is later charged with violating the 'no-dangerous-or-deadly-weapon' probation condition, he is free to contend the item is not a deadly or dangerous weapon under the specific circumstances of the alleged violation." (*Ibid.*) The same is true for defendant.

Defendant contends the facts regarding his underlying offense "have no bearing on how the pocket knife was used here." To the contrary, the court could reasonably determine defendant's history was relevant. Defendant did not suggest he held the knife for self-defense, a hobby, or other valid purpose. (Cf. *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1194-1196 [where juvenile had been attacked two days earlier and admitted to officers he had a knife to protect himself from gang members who saw him as friendly to a rival gang, evidence did not show he held knife to promote, further, or assist a gang].) It is the court's province to evaluate the probationer's intent. (§ 1203.2,

subd. (a).)  We must construe the record in the light most favorable to upholding the lower court's decision, including its credibility determinations.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)  Only "'"in a very extreme case"'" will we interfere with a probation decision.  (*People v. Urke* (2011) 197 Cal.App.4th 766, 773.)  This is not one of those cases.

## DISPOSITION

The trial court's finding defendant violated probation is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER_____

J.

We concur:

RAMIREZ_____

P. J.

FIELDS_____

J.

9