[Crim. No. 668.   Fourth Dist.   Mar. 17, 1949.]

THE PEOPLE, Respondent, v. DONALD LEACH, Appellant.

C. E. Crowley for Appellant.

Fred N. Howser, Attorney General, and James A. Doherty, Deputy Attorney General, for Respondent.

GRIFFIN, J.—Defendant Leach and one Lawson were accused in one count of an information with the crime of grand theft of $4,000 in jewelry, and in the second count with stealing an automobile, all belonging to one Morris. Both entered pleas of not guilty. Later, Lawson changed his plea to guilty on the second count and the first count was, as to him, dismissed. He became a witness against his codefendant whom the jury convicted on both counts. The case was tried before the Honorable Stanley Mussell, then judge of the superior court. After his appointment to this court a motion for new trial was made before and denied by the Honorable Martin J. Coughlin, judge. Application for probation was made and conditionally granted. Apparently there was no judgment imposing sentence but there was an order that imposition of sentence on each count be "suspended for three years." On appeal, defendant's main contention is that the evidence is insufficient to support the verdict.

Morris, from whom the jewelry and automobile were claimed to have been stolen, was a salesman of jewelers' supplies. According to his recollection, which was somewhat befogged, he met the two defendants about 11 p. m. on November 8th in a café in Rialto, where defendants, dressed as cowboys, were charitably donating such musical talent as they possessed. After considerable drinking, about 1 a. m., according to Morris, the three went to a motel. Morris supplied the rental money. The next morning Lawson left in the complaining witness's car and brought back some food. The next night the three registered at another motel and Morris went to sleep because he was feeling "about half sick." When he awakened the next morning his three suitcases, containing the jewelry, were missing from the cabin which was then locked from the outside. His car, which had been parked in the shed next to the cabin by him and Lawson the night before, was gone. The landlady unlocked the door and he later reported the theft.

The operator of the motel verified the fact that the three registered for the cabin on November 9th and their baggage was placed therein; that she, "on the evening of the *10th*," about 7 p. m. saw the lights turned off and she heard someone

going back and forth to the car; that the car pulled out and she saw only two people in it and they had on cowboy suits; that the next morning she discovered Morris locked in his cabin and the car had not been returned.

Lawson then testified for the People in reference to his meeting with the complaining witness and the renting of the cabins by the three for the two nights; that he, as driver, and Leach and Morris, rode around in the Buick to several drinking places; that about 11 p. m., on the second night, he and defendant took Morris's car from the cabin where it was parked; that the jewelry was in a grip in the cabin and Leach took it out to the car while he, Lawson, was giving Morris another drink of whiskey; that he locked the door of the cabin outside and went to Five Points where he opened the suitcase, in the presence of Leach, and traded two rings for a pair of boots, sold a wrist watch or two, and then they drove the car to the desert near Tecopa, and he there sold some more jewelry out of the bag while Leach was present in the car; that the money was used for the purpose of eating and buying gasoline to go to Baker, where they left the car parked a little ways out of town on an old road; that before they left San Bernardino he had Leach take the license plates off from his father's car and while near Tecopa they substituted the ones belonging to his father for the plates on the Morris car; that he and Leach talked over the question of returning to San Bernardino but feared Morris ''may have turned it in as a stolen car''; that they took the grip and jewelry and caught a bus back to San Bernardino; that they stayed in an auto court near Colton and pawned more jewelry and the two of them spent the money; that two or three nights later a girl friend, now Leach's wife, drove them to Phoenix, because they decided ''it was a little warm here for us''; that after they were through with the jewelry bag they threw it out on the desert.

Witnesses from Shoshone, Tecopa and San Bernardino were produced who purchased jewelry or loaned money thereon to Lawson, and some of them said they saw Lawson and another man at these several places in a car similar to that belonging to the complaining witness. One witness in San Bernardino identified defendant Leach as having endeavored to pawn an Elgin watch with him. Defendant then testified that he met Morris on the night of November 8th; that he drove his car around for him for a day or so; that Morris wanted liquor and was broke and that he gave defendant a

watch to pawn or sell for $10, and that he purchased whiskey with it for the complaining witness; that he knew nothing of the other jewelry and did not go with Lawson in the car to Baker nor to Phoenix. He offered certain alibi witnesses endeavoring to substantiate his testimony.

The motion for new trial was made on all the statutory grounds. Affidavits in support of the motion were presented and argued. Defendant, by these affidavits, produced evidence of conflicting statements made by Lawson to an officer and certain testimony of his taken at the preliminary hearing. These statements were somewhat in conflict with his present testimony as to the identity of the person who was with Lawson when he went to Baker and also to Phoenix. Lawson freely admitted he told an untruth at that time but claimed his present testimony was trustworthy.

Mrs. Leach admitted driving to Phoenix in her car with the defendant shortly after the commission of this crime but claims that Lawson was not with them. She there sold her automobile and defendant Leach went on to Texas where he remained until December. Shortly after his return he was arrested.

In analyzing this testimony and the question whether the testimony of the admitted accomplice was corroborated, we must keep in mind the general rule announced in *People* v. *Reingold,* 87 Cal.App.2d 382, 392 [197 P.2d 175], that we should first eliminate from consideration the testimony of the accomplice and if there is other evidence, though slight of itself, which tends directly and immediately to connect the defendant with the commission of the offense, the accomplice has been corroborated. (See, also, *People* v. *Trujillo,* 32 Cal.2d 105, 110 [194 P.2d 681] ; and *People* v. *Morton,* 139 Cal. 719, 724 [73 P. 609].)

█ Applying that test to the facts under consideration, there can be no reasonable argument against the conclusion that the evidence set forth, independent of Lawson's testimony, raises more than a grave suspicion that defendant Leach was directly and immediately involved in the commission of the crime. Morris testified directly that he gave no permission to sell his jewelry. His two companions, which included defendant, were present when he went to bed, but absent, along with his stock in trade and his automobile, the next morning. The door to his cabin was locked from the outside and the car was seen by the landlady being driven away and apparently she was satisfied and also satisfied the

jury that both Leach and Lawson were its only occupants at the time. Many of the articles of jewelry sold or pawned were identified and received in evidence. It is apparent that Morris's car was taken to Baker by Lawson and one other man. The corroboration of Lawson's testimony was sufficient and amply connected defendant Leach with the commission of the thefts with which he was charged. The credence to be given that evidence was for the jury to determine.

The only remaining point deserving consideration is the complaint that there was no foundation in the evidence for the giving of an instruction to the jury on the question of flight under section 1127c of the Penal Code. It is argued that mere departure by defendant to Phoenix and Texas without any showing of an intent to flee because of fear of prosecution, is not, of itself, evidence of intentional flight.

It is the rule that flight, standing alone, is not sufficient to establish guilt, but flight immediately after the commission of the offense, is a circumstance that may be considered, with other facts of the case, as tending to show a consciousness of guilt. In the instant case there was sufficient evidence produced justifying the giving of the instruction. (*People* v. *Peak*, 66 Cal.App.2d 894, 910 [153 P.2d 464]; *People* v. *Gregoris*, 70 Cal.App.2d 716, 720 [161 P.2d 568].)

Since the court exercised its option under section 1203.1 of the Penal Code, to suspend the *imposition of sentence* and grant probation, rather than impose sentence and suspend its *execution* by the granting of probation, there is no final judgment of conviction within the meaning of section 1237, paragraph one, of the Penal Code from which an appeal can be taken. (*In re Phillips*, 17 Cal.2d 55 [109 P.2d 344, 132 A.L.R. 644]; *People* v. *Ormes*, 88 Cal.App.2d 353 [198 P.2d 690].)

The attempted appeal from the alleged "judgment of conviction" is dismissed. The order denying a new trial is affirmed.

Barnard, P. J., concurred.

Mussell, J., being disqualified, did not participate herein.