[No. C003649. Third Dist. Aug. 25, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD JOHNSTON BATEY, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rule 976.1, the Reporter of Decisions is directed to publish all portions of this opinion except parts II and III of the Discussion.

## COUNSEL

William A. Davis, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, W. Scott Thorpe, Assistant Attorney General, and Mary Jane Hamilton, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**DAVIS, J.**—Defendant was convicted by a jury of assault with intent to commit rape. (Pen. Code § 220.) The jury also found that the defendant personally used a deadly weapon. (Pen. Code, § 12022, subd. (b) (now subd. (d).) Defendant was sentenced to the aggravated term of six years, plus one year for the use of a deadly weapon. Defendant contends his conviction should be reversed because the trial court improperly instructed the jury pursuant to CALJIC Nos. 2.52 (flight after crime), 2.04 (efforts by defendant to fabricate evidence), 2.06 (efforts to suppress evidence), and omitted 2.71 (corpus delicti must be proved independent of admission).[1] In the published portion of the opinion, we hold that the instruction on flight after the crime was properly given. In the unpublished portion of the opinion, we hold that the trial court committed harmless error by omitting an instruction that the corpus delicti must be proved independent of admissions. The jury was otherwise properly instructed. We accordingly affirm the judgment.

### A SUMMARY OF THE FACTS

On Tuesday, June 30, 1987, at about 11 a.m., the victim parked her car in Lot J of Upper Bidwell Park in Chico. As she was parking her car she

[1] Although defendant did not object to the giving of the jury instructions below, his objections are nonetheless cognizable on appeal. (Pen. Code § 1259; *People* v. *Satchell* (1971) 6 Cal.3d 28, 33, fn. 10 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383]; *People* v. *Roehler* (1985) 167 Cal.App.3d 353, 394 [213 Cal.Rptr. 353].)

noticed a van pull past her. She then walked down a nearby hill with her dog towards a creek where she put down a towel and began to read. About 15 minutes later a shirtless man with tatoos on his upper arms approached her carrying a beer can and wearing blue jeans and athletic shoes. The man stepped on the victim's towel and asked for her name. She told him to get off her towel and that she did not want to give him her name. The man then grabbed at and touched the top of the victim's swimsuit, causing her to stand up and push him away. He then reached around with his left hand and pulled out a hunting knife with a five-to-six inch serrated blade and black handle. The victim grabbed the hand which held the knife and struggled with the man. During the struggle she was struck repeatedly but did manage to get hold of the knife and throw it in the nearby creek. The man continued to strike her and unsuccessfully tried to pull down the bottom of her swimsuit. The victim asked the man why he was doing this and he replied: "I want to fuck you." With the aid of her dog who was biting the man's leg, she freed herself and fled to the parking lot.

Upon reaching her car the victim noticed that the van that pulled past her when she arrived was now parked next to her car. She later described the van as dark in color with a painted mural on the side. As Donald Flint was driving through Upper Bidwell Park, he noticed the victim with blood on her face and came to her aid. As Flint looked up the road to where she pointed, he saw a van approaching at a rapid speed. Flint later described the van as blue or gray, but noted that he is color blind. The van sped past Flint as he tried to stop it. He then shouted out the van's license plate number to a friend who wrote it down as 1UK1172. Later that day defendant, who is left-handed and has tatoos on both arms, was stopped while driving a white-over-gray older van with license plate number IDKT172.

The victim is nearsighted and was not wearing corrective lenses when attacked. She was, however, only a foot away from her assailant's face at times during the attack. She described the man as having light brown curly or frizzy hair, fairly long, blue eyes, and slightly discolored teeth. Later that day without her glasses and with 1 eye almost swollen shut, the victim was unable to identify anyone from 15 to 20 feet away at a field showup that defendant participated in. Later the victim identified defendant as her assailant out of a group of about 30 photographs. She also identified defendant at trial. Flint was unable to positively identify defendant at the field showup. He did identify defendant's van as the van that sped past him, and at trial was able to identify defendant as the driver of the van.

Between 10 a.m. and 12 noon on the day of the assault, Larry and Heidi Rainwater saw a man, later identified by Heidi at trial as defendant, drive an older gray Ford van into their driveway near Bidwell Park. Defendant

entered the driveway at a high rate of speed and hurriedly changed a tire. Defendant had blood on his shoulder and said he had just come from Bidwell Park where he had been collecting beer cans. Before noon that day Thomas Berry, owner of a Chico tire store, replaced defendant's ruined tire and wheel at his request.

At the scene of the crime, a beer can was found that matched the brand of cans later found in defendant's van. Also found at the crime scene was a cigarette butt matching the "Quality" brand of cigarettes defendant smokes, and pieces of tire tread and metal. A knife matching the description given by the victim was found in the creek. The ruined tire and rim were recovered from Berry's tire store. Gouge marks were found leading from Upper Bidwell Park into the Rainwaters' driveway. The distance between the gouge marks matched the recovered rim. A criminalist testified that the pieces of tire found at the scene came from the same tire, and that the pieces of metal from the crime scene came from the recovered rim.

Defense witnesses testified that defendant was in Cohasset, a town seven to ten miles north of Chico, on the morning of June 30th helping fix his father's car. He was last seen in Cohasset at 9:45 a.m. Camillia Kimball, defendant's neighbor, testified she saw defendant right around 10:30 a.m. on June 30th. During a discussion with defendant about her anticipated testimony, defendant asked Kimball to give him some room and say 10:30 a.m. to 11 a.m. Defendant later asked her to say she saw him at 11 a.m. or 11:15 a.m. A week before trial Kimball heard defendant say in a loud voice that he didn't like her lying about him and stating he should bash her head in.

## I. CALJIC No. 2.52

■ Defendant contends there was insufficient evidence to warrant instructing the jury on flight pursuant to CALJIC No. 2.52, and even had there been, it was improper to give an instruction on flight when the only contested issue was the identity of the assailant. We find that when, as in the present case, there is substantial evidence of flight by the defendant apart from his identification as the perpetrator, it is proper to instruct the jury on flight pursuant to CALJIC No. 2.52.[2]

Penal Code section 1127c provides: "In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show

---

[2] CALJIC No. 2.52 provides: "The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine."

guilt, the court shall instruct the jury substantially as follows: [¶] The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine. [¶] No further instruction on the subject of flight need be given." This statute was enacted in 1929 and codified the principle of the relevance of flight to show consciousness of guilt which has been recognized in our state's decisional law since 1873. (*People* v. *Stanley* (1873) 47 Cal. 113, 118.)

When there is substantial evidence of flight, a number of cases have upheld the giving of a flight instruction when the perpetrator's identity is a contested issue. (*People* v. *Davis* (1957) 48 Cal.2d 241, 247, 251 [309 P.2d 1]; *People* v. *Caudillo* (1980) 101 Cal.App.3d 122, 124-125 [161 Cal.Rptr. 293]; *People* v. *Vasquez* (1979) 94 Cal.App.3d 42, 44-45 [156 Cal.Rptr. 235]; *People* v. *Leach* (1949) 90 Cal.App.2d 667, 670-671 [203 P.2d 544].) Each of these cases, however, limited the analysis to whether there was sufficient evidence of flight.

More recently, a number of cases have held that a trial court should not instruct on flight if identity is "an issue in the case" or "the main issue." (*People* v. *Jackson* (1986) 187 Cal.App.3d 499, 511 [231 Cal.Rptr. 889]; *People* v. *Malgren* (1983) 139 Cal.App.3d 234, 242 [188 Cal.Rptr. 569]; *People* v. *Salazar* (1980) 108 Cal.App.3d 992, 998 [167 Cal.Rptr. 38].) Each of these cases relies on a statement to that effect in *People* v. *Anjell* (1979) 100 Cal.App.3d 189, 199 [160 Cal.Rptr. 669].[3] We concur with the thorough analysis of *Anjell* set forth in *People* v. *London* (1989) 206 Cal.App.3d 896, 903 [254 Cal.Rptr. 59] and *People* v. *Cowger* (1989) 202 Cal.App.3d 1066, 1074-1076 [249 Cal.Rptr. 240] which finds the often cited statement in *Anjell* mere dictum because the issue in *Anjell* was whether there was sufficient evidence of flight to support the instruction, not whether the issue of identity made the instruction improper. (*People* v. *London, supra,* 206 Cal.App.3d at p. 905: *People* v. *Cowger, supra,* 202 Cal.App.3d at p. 1076.) To withhold the flight instruction whenever identity is but one of the contested issues would disregard the mandate set forth in Penal Code section 1127c. It would also deprive the jury of a limiting instruction useful to the determination of one or more issues which, along with identity, are also being contested. In its absence, the jury might consider flight as sufficient for a finding of guilt. There are cases, cited in *London,* in which the defend-

---

[3] In resolving whether there was sufficient evidence of flight to warrant an instruction to the jury, the *Anjell* court stated: "The fact that the perpetrators fled the scene of the crime cannot warrant an instruction on flight where identity is a contested issue." (*People* v. *Anjell, supra,* 100 Cal.App.3d at p. 199.)

ant complained of the failure to give the flight instruction. (See *People* v. *London, supra,* 206 Cal.App.3d at p. 904, citing: *People* v. *Roy* (1971) 18 Cal.App.3d 537, 551 [95 Cal.Rptr. 884], disapproved on unrelated grounds in *People* v. *Ray* (1975) 14 Cal.3d 20, 32 [120 Cal.Rptr. 377, 533 P.2d 1017]; *People* v. *Sheldon* (1967) 254 Cal.App.2d 174, 181 [61 Cal.Rptr. 778]; *People* v. *Williams* (1960) 179 Cal.App.2d 487, 490-491 [3 Cal.Rptr. 782].) We therefore decline to follow the dictum in *Anjell* which would prohibit the giving of a flight instruction whenever identity is a contested issue. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 783, pp. 753-755, and cases cited therein.)

Here, it is clear that the only contested issue was the identity of the assailant.[4] The mere fact that the perpetrator fled from the immediate scene of the crime is immaterial in establishing the identity of the perpetrator. (*People* v. *Scott* (1988) 200 Cal.App.3d 1090, 1095 [246 Cal.Rptr. 406].) In *People* v. *Mask* (1986) 188 Cal.App.3d 450, 455-456 [233 Cal.Rptr. 181], this court held that when the only contested issue in the case is the identity of the perpetrator, it is improper to give a flight instruction pursuant to CALJIC 2.52. (See also *People* v. *Martinez* (1989) 207 Cal.App.3d 1204, 1213-1216 [255 Cal.Rptr. 691].) The court in *People* v. *Rhodes* (1989) 209 Cal.App.3d 1471 [258 Cal.Rptr. 71] recognized an important qualification to this general rule which we find applicable to the present case. A flight instruction is appropriate where there is substantial evidence of flight by the defendant apart from his identification as the perpetrator.

In *Rhodes,* there was substantial evidence that the defendant fled the scene of an arson. In fact, the defendant in *Rhodes* did not challenge the testimony depicting him as a person fleeing from the scene. He denied, however, setting the fire (*People* v. *Rhodes, supra,* 209 Cal.App.3d at p. 1474).

In the present case there was also substantial evidence defendant fled the scene of the crime apart from his identification as the perpetrator. Defendant's van was identified as the van that pulled past the victim when she first entered the parking lot, was parked next to her car, sped past Flint and the

---

[4] The prosecutor's arguments focused almost exclusively on the issue of the assailant's identity. Shortly after beginning her argument, the prosecutor stated: "So it would appear in this case that the real issue is identity. Who was the fellow that was in the park on June 30th?" Defendant limited his closing argument to a discussion of reasonable doubt and how it applies to the evidence regarding the identity of the assailant. In so doing defense counsel stated: ". . . there really is only one question in this whole case, and that is was Ed Batey the person who assaulted [the victim] in Upper Park on June 30th?" "And despite the parade of prosecution witnesses and law enforcement officers who did a very good investigation, the real issue comes down to whether [she] can identify the person who attacked her as being Mr. Batey."

injured victim as Flint tried to signal for the driver to stop, and thereafter continued away from the scene of the assault despite losing a significant portion of a tire. Flint identified defendant as the driver of the van that sped away from the scene of the crime despite his efforts to stop him. Heidi Rainwater identified defendant as the person who changed his damaged tire in her driveway near the scene of the crime. Cans of beer, pieces of tire and wheel, and a trail of markings in the road leading from the scene of the crime further implicated defendant as the person who fled the crime scene. Consequently, the jury could rationally draw a consciousness of guilt inference from the defendant's flight from the crime scene since his actions did connect him with the commission of the offense, as did other circumstantial evidence the jury was instructed they could consider in determining whether defendant was the assailant. (*People* v. *Simon* (1989) 208 Cal.App.3d 841, 851-852 [256 Cal.Rptr. 373].) An instruction on flight pursuant to CALJIC No. 2.52 was therefore a proper instruction to give to the jury.

## II., III.*

. . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Sparks, Acting P. J., and Sims, J., concurred.

---

*See footnote, *ante*, page 582.