Filed 6/26/14  P. v. Agundez CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EDGAR IVAN AGUNDEZ,<br><br>Defendant and Appellant. | F065745<br><br>(Super. Ct. No. F1190049)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Wayne R. Ellison, Judge.

James F. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted appellant Edgar Agundez of second degree robbery with personal use of a firearm.  (Pen. Code, §§ 211, 212.5, subd. (c), 12022.53, subd. (b).)[1]  He was

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

sentenced to 12 years in prison. On appeal, Agundez contends the trial court erred by giving a standard jury instruction on flight pursuant to CALCRIM No. 372. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Agundez was one of three suspects arrested in connection with the robbery of a gas station in northeast Fresno on January 4, 2011. Two eyewitnesses identified him as the perpetrator during field lineups conducted shortly after the offense occurred. Agundez was later charged with one count of second degree robbery and an enhancement allegation for use of a firearm during the commission of the crime. The matter was tried before a jury in 2012.

The prosecution's case included testimony from Eleasar Rosales, an employee of the AM/PM gas station and convenience store located at the intersection of Blackstone and Bullard Avenues. Mr. Rosales was working the graveyard shift on the night in question. At approximately 3:30 a.m., he observed a sport utility vehicle (SUV) pull into the gas station and park off to the side of the store. A man exited the SUV, walked into the store, and robbed him at gunpoint. Mr. Rosales identified Agundez in court as the gunman/robber.

Mr. Rosales was standing behind a cash register when the robbery occurred. Agundez pointed a pistol at him and told him to "back up," which he did. Agundez then removed approximately $200 from the register and left the store, heading in the direction of the parked SUV. Mr. Rosales lost sight of Agundez as he was leaving and did not actually see him enter the SUV, but saw the vehicle drive away moments later.

A customer named Matthew Lung witnessed part of the robbery. Mr. Lung testified to seeing a gold-colored SUV parked in front of the AM/PM when he arrived at the store to purchase a snack. The vehicle was occupied by a female driver and a male passenger. Upon entering the store, Mr. Lung saw a man, whom he identified at trial as Agundez, pointing a gun at Mr. Rosales. Mr. Lung quickly exited and walked across the

2.

street.  From there he watched as the SUV left the gas station and headed northbound on Blackstone Avenue.

Mr. Lung returned to check on Eleasar Rosales and found him in the middle of a telephone call with a 911 dispatcher.  Mr. Rosales initially told the dispatcher that a lone robber had driven away in a "dark blue [Chevrolet] Suburban with rims."  After speaking with Mr. Lung, he informed the dispatcher that two males were traveling with a female driver in a gold Suburban.

Officer Arthur Deleon, Jr., of the Fresno Police Department was on patrol near the crime scene when he received a report of the AM/PM robbery which described the suspected getaway vehicle as a "dark color or blue SUV with 20-inch rims."  A short while later, Officer Deleon observed a "gold Suburban with 20-inch rims" traveling northbound on Blackstone Avenue towards the Herndon Avenue intersection at an estimated speed of 40-50 miles per hour.  The SUV made a right turn onto Herndon but stopped abruptly in the middle of the intersection when the driver saw Officer Deleon's marked police cruiser.  When it resumed travel, the vehicle proceeded to southbound Highway 41.

At approximately the same time as the SUV was entering the highway, Officer Deleon received an updated report indicating that the suspect vehicle was gold-colored. This prompted him to pursue the Suburban as it drove down Highway 41, took the westbound exit for Highway 180, and looped back around to Blackstone Avenue.  The SUV continued south on Blackstone and across Divisadero Street before flipping over on its side due to a failed attempt to turn sharply onto westbound Stanislaus Street.  Officer Deleon estimated the vehicle was traveling at a speed of approximately 70 miles per hour when it crashed.

Police found Agundez, a female driver, and another male passenger inside of the wrecked vehicle.  During a field lineup conducted at the crash site, Matthew Lung identified Agundez as "the guy with the gun" whom he had seen inside the AM/PM.

Mr. Lung positively identified the other two suspects as the individuals who were parked outside the store at the time of the robbery. Eleasar Rosales positively identified Agundez during a similar lineup procedure.

The gold Suburban was registered to Agundez. A search of its interior produced a loaded handgun and $200 in cash. Police also found approximately $38 in rolled coins and loose change.

The trial court held a jury instruction conference during a break in the prosecution's case-in-chief to address the propriety of informing the jury that it could infer consciousness of guilt from evidence of the defendant's flight. The court was initially reluctant to give such an instruction because the perpetrator's identity was a disputed issue in the case. Defense counsel further objected to the use of a flight instruction since Agundez was not the driver of the getaway car. The prosecution ultimately persuaded the trial judge to instruct the jury on flight pursuant to CALCRIM No. 372.

The jury returned a guilty verdict on the charge of second degree robbery and found true the enhancement allegation regarding personal use of a firearm. Agundez was sentenced to a total of 12 years in prison, including a mandatory 10-year term for the firearm enhancement under section 12022.53, subdivision (b). A timely notice of appeal was filed on the date of sentencing.

## DISCUSSION

Agundez claims the trial court erred by instructing the jury on flight. The challenged instruction tracked the language of CALCRIM No. 372 as follows: "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself."

CALCRIM No. 372 provides an accurate and facially constitutional statement of the law. (*People v. Paysinger* (2009) 174 Cal.App.4th 26, 29-32; *People v. Hernandez Rios* (2007) 151 Cal.App.4th 1154, 1158-1159.) The instruction is routinely given to ensure compliance with section 1127c, which "requires that whenever evidence of flight is relied on to show guilt, the court must instruct the jury that while flight is not sufficient to establish guilt, it is a fact which, if proved, the jury may consider." (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1243 (*Pensinger*).) Agundez does not dispute the legal correctness of CALCRIM No. 372, but argues the evidence adduced at trial did not warrant a flight instruction of any kind. The standard of review for such a claim is de novo, and the dispositive inquiry is whether the evidence in the record supports the use of the instruction. (*People v. Waidla* (2000) 22 Cal.4th 690, 733; *People v. Ross* (2007) 155 Cal.App.4th 1033, 1052 (*Ross*).)

"A party is entitled to a requested instruction if it is supported by substantial evidence." (*Ross, supra,* 155 Cal.App.4th at p. 1049.) Thus, "[i]t is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.) Evidence is substantial in this context if it reasonably permits the jury to find that the facts underlying the instruction existed. (*Ross, supra,* 155 Cal.App.4th at pp. 1049-1050; *People v. Oropeza* (2007) 151 Cal.App.4th 73, 78.)

We note first that the trial court properly abandoned its misgivings about using a flight instruction in a case where the defendant's identity as the perpetrator was disputed. In *People v. Anjell* (1979) 100 Cal.App.3d 189 (*Anjell*), which also involved an armed robbery, the First District stated: "The fact that the perpetrators fled the scene of the crime cannot warrant an instruction on flight where identity is a contested issue." (*Anjell, supra*, 100 Cal.App.3d at p. 199.) Other districts subsequently treated this statement as erroneous dicta. (See, e.g., *People v. Batey* (1989) 213 Cal.App.3d 582, 586-587). The debate was resolved by the California Supreme Court's holding in *People v. Mason*

(1991) 52 Cal.3d 909 (*Mason*): "If there is evidence identifying the person who fled as the defendant, and if such evidence 'is relied upon as tending to show guilt,' then it is proper to instruct on flight." (*Mason*, *supra*, 52 Cal.3d at p. 943 and fn. 13 [disapproving *Anjell* "and its progeny"]; accord, *People v. Avila* (2009) 46 Cal.4th 680, 710 ["[A] flight instruction does not create an unconstitutional permissive inference or lessen the prosecutor's burden of proof, and is proper even when identity is at issue."].)

Agundez refuses to acknowledge the overwhelming evidence of his guilt in this case, arguing that "the failure of the prosecution to identity [*sic*] appellant as either the robber, or the person who fled the robbery scene, precluded giving a flight instruction." To support this contention, he makes an out-of-context citation to testimony given by Eleasar Rosales on cross-examination concerning a photographic exhibit. Defense counsel asked, "As you sit here today, based on that photograph, are you 100 percent certain that that's the person that walked into the store based on that photograph that night and robbed you? Mr. Rosales replied, "I can't say 100 percent."

The testimony of a single eyewitness is sufficient to prove a defendant's identity. (Evid. Code, § 411; *People v. Anderson* (2001) 25 Cal.4th 543, 570-575; *People v. Allen* (1985) 165 Cal.App.3d 616, 623.) Absolute certainty is not required. "It is a familiar rule that 'In order to sustain a conviction the identification of the defendant need not be positive. [Citations.] Testimony that defendant "resembles" the robber [citation] or "looks like the same man" [citation] has been held sufficient. . . .'" (*People v. Barranday* (1971) 20 Cal.App.3d 16, 22, quoting *People v. Wiest* (1962) 205 Cal.App.2d 43, 45; see also, *People v. Cooks* (1983) 141 Cal.App.3d 224, 278 [substantial evidence found where witness was "90 percent sure" of his identification].) Any purported weaknesses in the witness's testimony are to be evaluated by the jury. (*People v. Elwood* (1988) 199 Cal.App.3d 1365, 1372.)

Here, the prosecution clearly proffered substantial evidence of appellant's identity as the robber. Despite Mr. Rosales's response to the question about the photograph,

which apparently depicted Agundez at the time of the robbery, both he and Matthew Lung were unwavering in their in-court identifications. Each claimed to recognize Agundez, even though he had changed his appearance by shaving his mustache and putting on glasses.

Agundez also attempts to expand upon the objection of his trial attorney regarding the female accomplice and the fact that no one actually saw him get into the Suburban before it drove away from the crime scene. As best we can discern from his arguments, he is claiming that proof of flight requires continuous observation of the defendant's movements by an eyewitness, and the lack of any assistance by a co-conspirator. The law does not impose such burdens.

The relevant legal principles are summarized succinctly in *People v. Bonilla* (2007) 41 Cal.4th 313 (*Bonilla*). "'In general, a flight instruction "is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt."'" (*Bonilla*, *supra*, 41 Cal.4th at p. 328.) "Evidence that a defendant left the scene is not alone sufficient; instead, the circumstances of departure must suggest 'a purpose to avoid being observed or arrested.'" (*Ibid*., citations omitted.) "To obtain the instruction, the prosecution need not prove the defendant in fact fled, i.e., departed the scene to avoid arrest, only that a jury *could* find the defendant fled and permissibly infer a consciousness of guilt from the evidence." (*Ibid*., original italics.)

Agundez cannot deny the evidence of his departure from the crime scene. This was established by Eleasar Rosales's testimony that he saw him walk out of the AM/PM after taking money from the cash register. The testimony of Mr. Rosales and Mr. Lung likewise established a purpose for Agundez to avoid being observed or arrested; two eyewitnesses had just seen him commit armed robbery. It does not matter that an accomplice facilitated his escape, since flight "requires neither the physical act of running nor the reaching of a far-away haven." (*People v. Bradford* (1997) 14 Cal.4th 1005,

7.

1055, citations omitted.)  The furtive actions of the driver only bolstered the already-substantial evidence on the issue.  (See *People v. Elliott* (2012) 53 Cal.4th 535, 584 [evidence of defendant's departure combined with eyewitness identification testimony is sufficient to support a flight instruction.].)

The evidence in this case was sufficient to support the trial court's decision to instruct the jury with CALCRIM No. 372.  We therefore reject appellant's assertions of error, including his constitutional due process claims.  (See *Pensinger*, *supra*, 52 Cal.3d at pp. 1243-1244 ["Instruction on an entirely permissive inference is invalid as a matter of due process only if there is no rational way the jury could draw the permitted inference."].)

## DISPOSITION

The judgment is affirmed.


_____
Gomes, J.

WE CONCUR:


_____
Cornell, Acting P.J.


_____
Detjen, J.