Filed 11/21/24  P. v. Ancira CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANGEL CASTREJON ANCIRA,<br><br>    Defendant and Appellant. | D082994<br><br><br>(Super. Ct. No. FWV21002440) |

APPEAL from a judgment of the Superior Court of San Bernardino, John Nguyen, Judge.  Affirmed as modified and remanded with instructions.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Kristen Kinnaird Chenelia, Deputy Attorneys General for Plaintiff and Respondent.

# I
# INTRODUCTION

Angel Castrejon Ancira appeals a judgment of conviction after a jury found him guilty of the first degree premeditated murder of Monique Briseno (Pen. Code, § 187, subd. (a)),[1] and found he personally used a deadly and dangerous weapon—to wit, a knife—to commit the murder (§ 12022, subd. (b)(1)).  He claims the evidence was insufficient to prove he killed Briseno or acted with the premeditation and deliberation necessary to support a conviction for first degree murder, rather than second degree murder.

We conclude there was ample circumstantial evidence to prove Ancira killed Briseno.  However, we agree with Ancira there was insufficient evidence to support a finding of premeditation and deliberation.  Therefore, we modify the judgment to reduce the first degree murder conviction to a second degree murder conviction and affirm the judgment as modified.  We remand the matter to the trial court to resentence Ancira, prepare an amended abstract of judgment, and forward a copy of the amended abstract of judgment to the California Department of Corrections and Rehabilitation.

# II
# BACKGROUND

A. *The Vehicle Theft*

On May 4, 2021, Ancira socialized with his cousin for a few hours.  At some point during the visit, Ancira took his cousin's car key and stole her car.

B. *Ancira's Flight from the Murder Scene*

Two days later, while driving his cousin's car, Ancira turned onto a southbound street and clipped a traffic island, causing one of the car's rear

---

1    Further undesignated statutory references are to the Penal Code.

tires to blow out. He continued driving on the car's wheel rim, fishtailed, turned at the next intersection onto a westbound street, and then turned onto a southbound street that ended in a cul-de-sac. He parked on the cul-de-sac.

A man walking his dog saw Ancira's erratic driving and called the police. The man briefly lost sight of the car when it pulled into the cul-de-sac. However, he regained visibility within 30 or 40 seconds by peeking over a retaining wall and through a wrought iron gate. The man saw Ancira standing outside the parked car using his shirt to wipe down the driver's side door and door handle. Ancira wore a maroon t-shirt, shorts, and a large gold chain. After wiping the door, Ancira ran to the wrought iron gate and jumped over it. The witness quipped, "Stolen car, huh, bud?" Ancira said something in response that the man could not hear, then ran across the street and climbed over a wall on the opposite side of the street.

After Ancira jumped the wall, a neighbor saw him running down his street. Ancira asked the man for a ride and he refused. Ancira again asked for a ride and, once more, the man refused. Ancira continued running and hopped over another fence. At some point during his attempt to flee, Ancira broke into an unlocked recreational vehicle (RV) and stole a Hawaiian shirt from the RV's closet. He also dropped the key to his cousin's stolen car in front of the RV.

Another neighbor saw Ancira—now donning the Hawaiian shirt—as he ran between houses and cars parked on her street. When Ancira noticed her, he asked to use her phone and said he had been jumped and needed to call his mother. She said she would call his mother on his behalf and Ancira gave her a phone number. The woman went inside and called the phone number. A man answered the phone and the woman explained there was a young man

3

in her driveway who had asked her to call his mother.  The man on the phone sighed and hung up.  The woman walked back outside and Ancira was gone.

Shortly after, police officers apprehended Ancira less than a quarter mile away from where he had abandoned his cousin's stolen car.

C. *The Victim*

Meanwhile, back at the abandoned car, witnesses heard a woman whimpering and calling for help.  They noticed the car's rear passenger door was open and discovered the victim, 20-year-old Monique Briseno, lying on the street near the car's rear bumper.  Briseno struggled to speak and was covered with blood on her face and body.  She died in a matter of minutes due to severe sharp-force injuries.

Briseno had been sliced 12 times and stabbed 10 times with a knife, sustaining a total of 22 sharp-force injuries.  She sustained two stab wounds and four incised wounds to her head and neck, including one fatal wound to her left frontal scalp that penetrated her skull and brain.[2]  She suffered three stab wounds to the torso, one of which was a fatal wound to her right chest that punctured her right lung and a major blood vessel.  She also suffered five stab wounds and eight incised wounds on her extremities, including one fatal stab wound to the interior left shoulder that penetrated her left lung.  The wounds to her arms and hands may have been defensive wounds.

An autopsy showed Briseno had marijuana, methamphetamine, and fentanyl in her system at the time of death.

---

[2]    A stab wound is a wound where the depth of the wound is greater than the length of the wound on the skin, while an incised wound is a wound where the length of the wound is greater than the depth of the wound.

D. *Blood and DNA Evidence*

Police officers found a knife wedged in the crevice of the driver's seat of the car between the seat and the seatback. There were blood stains throughout the interior of the car on the seats, doors, door handles, windows, center console, and floors, as well as the exterior driver's side door handle. The front passenger seat had a cut or stab mark on it and the rear passenger seat window had a bloody shoe print on it.

There was substantially less blood on the driver's seat than the front passenger seat. According to a crime scene specialist, the minimal amount of blood on the driver's seat indicated that someone or something was positioned in the driver's seat during the attack. The crime scene specialist also opined that Briseno likely was positioned in the front passenger seat at some point during the attack. Based on the location of Briseno's body, the presence of blood throughout the car's interior, the relatively minimal amount of blood on the driver's seat, the bloody shoe print on the rear passenger window, and the fact that most of Briseno's wounds were on the front of her body, the prosecution theorized Ancira was seated in the driver's seat when he stabbed Briseno, who was seated in the front passenger seat. According to the prosecution, Briseno climbed into the backseat and ultimately pulled herself out of the car to try to escape her attacker.

Briseno's blood was found on the blade and the handle of the knife that was found in the car. Her blood was also found on Ancira's hands and on his maroon t-shirt.

III

DISCUSSION

Ancira challenges his first degree premeditated murder conviction on grounds there was insufficient evidence to support the conviction. He attacks

5

the sufficiency of the evidence in two respects. First, he claims the evidence was inadequate to establish his identity as Briseno's killer. Second, he contends there was insufficient evidence he acted with premeditation and deliberation. We reject the former argument, but find the latter argument meritorious.

A. *Standard of Review*

" ' "When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' " (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 626, italics added.)

"However, 'a reasonable inference … "may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work. [¶] … A finding of fact must be an inference drawn from evidence rather than … a mere speculation as to probabilities without evidence." ' " (*People v. Davis* (2013) 57 Cal.4th 353, 360; see *People v. Jenkins* (2023) 95 Cal.App.5th 142, 150–151 ["While inferences may constitute substantial evidence in support of a judgment, they must be the probable outcome of logic applied to direct evidence; mere speculative possibilities or conjecture are infirm."].)

B. *Substantial Evidence Proved Ancira Killed Briseno*

For a defendant to be liable for murder as a direct perpetrator, the prosecution must prove the defendant unlawfully killed a human being, or a fetus, with malice aforethought. (§ 187, subd. (a).) If the killing is willful, deliberate, and premeditated, it is first degree murder. (§ 189, subd. (a).) In this appeal, Ancira contends the evidence adduced at the murder trial was insufficient to prove, beyond a reasonable doubt, that he killed Briseno.

On the contrary, we conclude there was compelling circumstantial evidence to prove Ancira's identity as Briseno's killer. The location of Briseno's body, the physical evidence from inside the car (including the extensive blood stains, the murder weapon, and the cut or stab mark on the passenger seat), and the testimony of the crime scene specialist supported a finding that Briseno was stabbed inside the car Ancira had stolen from his cousin just two days earlier. A witness (the man walking his dog) identified Ancira as the driver of the car at or about the time it is believed Briseno was stabbed inside it. Indeed, a forensic pathologist testified that Briseno died within a matter of "minutes" of being stabbed—precisely when Ancira was spotted inside the car with her. Further, the witness observed no one else inside the car while it was in motion and nobody else near the car after Ancira parked it. And, when law enforcement apprehended Ancira, he had Briseno's blood on his hands and t-shirt. Ancira's presence at the murder scene at the time of the murder, and the existence of Briseno's blood on his hands and clothing, gave rise to an extremely strong inference that Ancira killed Briseno. (See *People v. Gomez* (2018) 6 Cal.5th 243, 279–280 [substantial evidence supported murder conviction where it showed defendant was present at murder scene at time of murder]; *People v. DePriest* (2007) 42 Cal.4th 1, 45–46 [same].)

7

Ancira's post-crime conduct also gave rise to a reasonable inference he harbored a consciousness of guilt about killing Briseno. The witness who identified Ancira as the driver observed him wiping down the driver's side door and door handle—where Briseno's blood was later found—mere moments after the stabbing. According to numerous witnesses, Ancira then fled from the immediate vicinity of the crime scene to a nearby neighborhood, asked a neighbor for a ride to escape further from the crime scene, tried contacting an unidentified acquaintance for assistance, and stole clothing in an apparent attempt to disguise himself. "[E]vidence of defendant's flight after the crime[] [was] committed support[ed] an inference of consciousness of guilt." (*People v. Williams* (2013) 56 Cal.4th 630, 679; see *People v. Batey* (1989) 213 Cal.App.3d 582, 588 ["the jury could rationally draw a consciousness of guilt inference from the defendant's flight from the crime scene"]; *People v. Vu* (2006) 143 Cal.App.4th 1009, 1030 [evidence defendant tried "to hide after the crime … show[ed] consciousness of guilt"].)

Ancira contends the evidence was insufficient to prove his identity as the killer because no witness directly observed him stabbing Briseno. Although no witness testified to observing Ancira while he was in the physical act of stabbing Briseno, the prosecution was not required to produce such direct evidence to sustain the murder conviction. " 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " (*People v. Brooks* (2017) 3 Cal.5th 1, 57; see also *People v. Catlin* (2001) 26 Cal.4th 81, 142 ["Circumstantial evidence may constitute substantial evidence of guilt."]; *People v. Hindmarsh* (1986) 185 Cal.App.3d 334, 351 ["our review of the record convinces us that substantial evidence supported the finding that appellant was the perpetrator of the [murders] of which he was convicted"].) Here, the circumstantial evidence of Ancira's guilt

was persuasive and powerful. It was sufficient to prove, beyond a reasonable doubt, that Ancira was Briseno's killer.

C. *Substantial Evidence Did Not Support the Jury's Premeditation and Deliberation Finding*

In addition to challenging the sufficiency of the evidence to prove his identity as Briseno's killer, Ancira contends substantial evidence did not support the jury's finding of premeditation and deliberation, which elevated the conviction from second degree murder to first degree murder.

As noted, first degree murder includes any willful, deliberate, and premeditated killing. (§ 189, subd. (a).) " ' " 'In this context, "premeditated" means "considered beforehand," and "deliberate" means "formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action." ' " [Citation.] " 'An intentional killing is premeditated and deliberate if it occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse.' " [Citations.] "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly …." ' " (*People v. Morales* (2020) 10 Cal.5th 76, 88 (*Morales*).)

In *People v. Anderson* (1968) 70 Cal.2d 15 (*Anderson*), the California Supreme Court identified three categories of evidence that are generally "sufficient to sustain a finding of premeditation and deliberation: (1) planning activity, or 'facts about how and what defendant did *prior* to the actual killing which show that the defendant was engaged in activity directed toward, and explicable as intended to result in, the killing'; (2) motive, or 'facts about the defendant's *prior* relationship and/or conduct with the victim from which the jury could reasonably infer a "motive" to kill the victim'; and (3) manner of killing, or 'facts about the nature of the killing from which the

9

jury could infer that the *manner* of killing was so particular and exacting that the defendant must have intentionally killed according to a "preconceived design" to take his victim's life in a particular way for a "reason" ….' " (*Morales, supra*, 10 Cal.5th at pp. 88–89.)

The *Anderson* factors are descriptive, not normative or exhaustive. (*People v. Rivera* (2019) 7 Cal.5th 306, 324.) They "need not be present in any particular combination to find substantial evidence of premeditation and deliberation." (*People v. Stitely* (2005) 35 Cal.4th 514, 543.) Further, "courts need not accord them any particular weight." (*People v. Halvorsen* (2007) 42 Cal.4th 379, 420.) Nonetheless, they " ' " 'guide an appellate court's assessment whether the evidence supports an inference that the killing occurred as the result of preexisting reflection rather than unconsidered or rash impulse.' " ' " (*People v. Cage* (2015) 62 Cal.4th 256, 276.) " '[W]hen the record discloses evidence in all three categories, the verdict generally will be sustained.' " (*Stitely*, at p. 543.) By contrast, "[e]vidence in only one of these areas most often is insufficient" to prove premeditation and deliberation. (*People v. Alcala* (1984) 36 Cal.3d 604, 626 (*Alcala*).)

*Anderson* itself presents an example of a case in which the evidence was insufficient to support a finding of premeditation and deliberation. In *Anderson*, the defendant resided with the 10-year-old victim and her family. (*Anderson, supra*, 70 Cal.2d at p. 19.) While the victim's family members were away, the defendant inflicted more than 60 sharp-force injuries—both severe and superficial—over the victim's entire body. (*Id.* at pp. 21–22.) The victim's bloodstained dress was found torn from her body, the crotch of her underwear was ripped out, and the victim suffered vaginal lacerations and a partial cutting off of her tongue. (*Id.* at pp. 21–22.) Still, the Supreme Court found the evidence of premeditation and deliberation "totally lacking." (*Id.* at

10

p. 26.)  With regard to the manner-of-killing evidence, in particular, the *Anderson* court concluded the "manner of killing (brutal hacking) [did] not support a reasonable inference of deliberately placed blows, which could in turn support an inference that the act of killing was premeditated rather than 'hasty and impetuous.' " (*Id.* at p. 31.)  Rather, "the only inference which the evidence reasonably support[ed] … [was] that the killing resulted from a 'random,' violent, indiscriminate attack rather than from deliberately placed wounds inflicted according to a preconceived design." (*Id.* at p. 32.)  Further, although the defendant lied to the victim's family members about her whereabouts after the murder, and attempted to clean up bloodstains in the home where the murder occurred, the court concluded the defendant's post-crime conduct did not prove premeditation and deliberation.  According to the Court, such post-crime conduct "possibly [bore] on defendant's state of mind *after* the killing, [but] it [was] irrelevant to ascertaining defendant's state of mind immediately prior to, or during, the killing." (*Ibid.*)

In the present case, the People concede there was no planning or motive evidence—none whatsoever.  Our independent review of the record confirms there was no evidence of Ancira's conduct before the stabbing (planning evidence).  Nor, apart from Briseno's presence in the car with Ancira, was there evidence of any relationship or connection between Ancira and Briseno, let alone evidence of why he killed her (motive evidence).

Faced with these significant evidentiary gaps, the People rely on evidence of the manner of the killing to support their assertion that a jury could reasonably find premeditation and deliberation.  The Supreme Court has, in one case of which we are aware, "concluded that an execution-style killing may be committed with such calculation that the manner of killing will support a jury finding of premeditation and deliberation, despite little or

11

no evidence of planning and motive." (*People v. Lenart* (2004) 32 Cal.4th 1107, 1127, citing *People v. Hawkins* (1995) 10 Cal.4th 920, 957, abrogated on another ground by *People v. Lasko* (2000) 23 Cal.4th 101, 110–111.) However, Briseno was not killed in an execution-like manner. "With no evidence of planning or motive and a killing that cannot be described as 'execution-style,' the application of the *Anderson* factors weighs heavily in favor of concluding there was insufficient evidence for a reasonable jury to conclude that the killing was the result of premeditation and deliberation." (*People v. Boatman* (2013) 221 Cal.App.4th 1253, 1269–1270.)

The People contend the manner of the killing gives rise to a reasonable inference of premeditation and deliberation because Ancira stabbed or sliced Briseno many times and struck fatal blows to three vital areas of her body. They argue this evidence demonstrated that Ancira intentionally targeted Briseno's most vulnerable areas. Further, they cite several Supreme Court cases for the proposition that a defendant's infliction of numerous cut or stab wounds—particularly to a victim's vital regions—can establish a deliberate intention to kill. (See *Morales, supra*, 10 Cal.5th at pp. 89–92; *People v. Elliott* (2005) 37 Cal.4th 453, 471–472 (*Elliott*); *People v. San Nicholas* (2004) 34 Cal.4th 614, 657–659 (*San Nicholas*); *People v. Pride* (1992) 3 Cal.4th 195, 246–248 (*Pride*); *Alcala, supra*, 36 Cal.3d at pp. 625–627.)

We are not convinced by this argument. Contrary to the People's claim, the evidence did not suggest Ancira concentrated or clustered his attacks on vital regions of Briseno's body. Although three cuts or stabs hit her vital regions, 19 of them did not. Ancira inflicted sharp-force injuries across Briseno's upper body with no discernable focus on any given region. In fact, Briseno's extremities—namely her arms and hands—were struck more than any other part. Much like the killing at issue in *Anderson*—where the victim

received more than 60 wounds across her body ranging in severity from superficial to severe—the 22 wounds that were inflicted on Briseno appeared to be the result of a random, violent, and indiscriminate attack, rather than a preconceived design to kill. (See *Anderson, supra*, 70 Cal.2d at p. 32.)

Moreover, although the infliction of numerous cut or stab wounds can sometimes indicate a planned killing when combined with other evidence of premeditation and deliberation, "[t]he fact that a slaying was unusually brutal, or involved multiple wounds, cannot alone support a determination of premeditation." (*Alcala, supra*, 36 Cal.3d at pp. 625–627; *People v. Pensinger* (1991) 52 Cal.3d 1210, 1238 ["brutality alone cannot show premeditation; a brutal killing is as consistent with a killing in the heat of passion as with a premeditated killing"]; *People v. Pantoja* (2004) 122 Cal.App.4th 1, 14 ["Nor does the sheer quantity of the wounds or the existence of defensive wounds on [the victim's] hands prove that the assault was not committed upon sudden provocation"].) Tellingly, in every Supreme Court decision upon which the People rely, the Court affirmed the challenged jury findings of premeditation and deliberation because there was evidence satisfying all three of the *Anderson* factors. (*Morales, supra*, 10 Cal.5th at pp. 89–92; *Elliott, supra*, 37 Cal.4th at pp. 471–472; *San Nicholas, supra*, 34 Cal.4th at pp. 657–659; *Pride, supra*, 3 Cal.4th at pp. 246–248; *Alcala,* at pp. 625–627.) Here, by contrast, there was no evidence relevant to two of the three *Anderson* factors. Thus, whatever inferences might reasonably be drawn from the brutality of slayings in other factual contexts, the manner-of-killing evidence at issue here was not so compelling that, standing alone, it gave rise to a rational finding of premeditation and deliberation.

Ancira's post-crime conduct also did not, standing alone, give rise to a reasonable finding of premeditation and deliberation. A defendant's post-

crime conduct is "not sufficient in [itself] to establish premeditation and deliberation," but it is one factor "a jury [can] reasonably consider in relation to the manner of killing." (*People v. Perez* (1992) 2 Cal.4th 1117, 1128.)

Here, there was evidence Ancira did not aid Briseno or seek assistance from 9-1-1 or nearby witnesses after the stabbing. Rather, he quickly tried to hide the evidence of his crime by wiping down the car door and wedging the murder weapon into the crevice of the car seat. He also approached strangers—erratically and seemingly at random—in a fruitless attempt to flee the area. Clearly, this conduct demonstrated fear and a consciousness of guilt. But it did not tend to suggest that Ancira killed Briseno pursuant to a preconceived design to kill. (See *Anderson, supra*, 70 Cal.2d at p. 32 ["Evasive conduct shows fear: it cannot support the double inference that defendant planned to hide his crime at the time he committed it and that therefore defendant committed the crime with premeditation and deliberation."]; *People v. Wear* (2020) 44 Cal.App.5th 1007, 1031 ["we are not aware of any authority 'supporting the proposition that defendants tend to flee [or dispose of evidence] only when they have committed certain crimes but not others' "].) On the contrary, Ancira's slipshod post-crime actions were so spontaneous, perfunctory, and haphazard as to suggest that Ancira killed Briseno rashly and impulsively with little or no forethought.

Given the absence of any motive or planning evidence, as well as the neutral manner-of-killing and post-crime evidence, we conclude there was insufficient evidence to support a reasonable finding that Ancira premeditated and deliberated the murder. Because the evidence did not support a premeditation and deliberation finding, we must reduce the first degree premeditated murder conviction to a second degree murder conviction

14

and remand the matter to the trial court for resentencing and preparation of an amended abstract of judgment.[3]  (*Anderson, supra*, 70 Cal.2d at p. 23.)

IV

DISPOSITION

The judgment is modified to reduce the first degree premeditated murder conviction to a second degree murder conviction.  As modified, the judgment is affirmed.  The matter is remanded to the trial court with instructions to resentence Ancira, prepare an amended abstract of judgment, and forward a copy of the amended abstract of judgment to the California Department of Corrections and Rehabilitation.

McCONNELL, P. J.

WE CONCUR:

O'ROURKE, J.

DATO, J.

---

[3]     In light of our modification of the judgment and remand for resentencing purposes, we do not address Ancira's argument that the existing abstract of judgment contains a clerical error requiring correction.

15